IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
July 22, 2004 Session

## MARY O. McINTOSH v. M. A. BLANTON, III, M.D., ET AL.

**Direct Appeal from the Circuit Court for Obion County**
**No. 0-0133     William B. Acree, Jr., Judge**

_____

**No. W2003-02659-COA-R3-CV - Filed August 19, 2004**

_____

Plaintiff appeals the award of summary judgment to defendant physician based on the statute of limitations for medical malpractice actions.  We reverse and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and ALAN E. HIGHERS, J., joined.

Michael W. Whitaker, Covington, Tennessee and Charles Kelly, Dyersburg, Tennessee, for the Appellant, Mary O. McIntosh.

Timothy G. Wehner and Craig P. Sanders, Jackson, Tennessee, for the appellee, M. A. Blanton, III, M.D.

### OPINION

On April 5, 2000, Mary O. McIntosh (Ms. McIntosh) filed a complaint for medical malpractice against Baptist Memorial Hospital-Union City ("the Hospital") and M. A. Blanton, III, M.D. (Dr. Blanton).  The trial court awarded summary judgment to the Hospital on September 5, 2000, and to Dr. Blanton on October 15, 2003.  The court's award of summary judgment to Dr. Blanton was based on a finding that Ms. McIntosh's action was barred by the one-year statute of limitations for medical malpractice actions as codified at Tennessee Code Annotated § 29-26-116(a) and § 28-3-104.  Ms. McIntosh appeals the award of summary judgment to Dr. Blanton, asserting her cause of action was filed within one year of discovery of the injury.  We reverse the award of summary judgment based on the statute of limitations and remand for further proceedings.

## Issues Presented

Ms. McIntosh presents the following issues, as we re-state them, for review by this Court:

(1)     Whether the trial court erred by dismissing the cause of action based on the statute of limitations where Ms. McIntosh filed it within one year of discovery of her injury.

(2)     Whether Dr. Blanton is estopped from raising the statute of limitations as a defense by making misleading statements to Ms. McIntosh.

## Standard of Review

Summary judgment is appropriate only when the moving party can demonstrate that there are no disputed issues of material fact, and that it is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *Byrd v. Hall*, 847 S.W.2d 208, 214 (Tenn. 1993). The party moving for summary judgment must affirmatively negate an essential element of the nonmoving party's claim, or conclusively establish an affirmative defense. *McCarley v. West Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998).

When a party makes a properly supported motion for summary judgment, the burden shifts to the nonmoving party to establish the existence of disputed material facts. *Id.* A mere assertion that the nonmoving party has no evidence does not suffice to entitle the moving party to summary judgment. *Id.* In determining whether to award summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Staples v. CBL & Assocs.*, 15 S.W.3d 83, 89 (Tenn. 2000). The court should award summary judgment only when a reasonable person could reach only one conclusion based on the facts and the inferences drawn from those facts. *Id.* Summary judgment is not appropriate if there is any doubt about whether a genuine issue of material fact exists. *McCarley*, 960 S.W.2d at 588. We review an award of summary judgment *de novo*, with no presumption of correctness afforded to the trial court. *Guy v. Mut. of Omaha Ins. Co.*, 79 S.W.3d 528, 534 (Tenn. 2002).

## Analysis

The pivotal issue in this appeal is the application of the discovery rule to Ms. McIntosh's action. The Tennessee Code provides:

(a)(1) The statute of limitations in malpractice actions shall be one (1) year as set forth in § 28-3-104.
(2) In the event the alleged injury is not discovered within such one (1) year period, the period of limitation shall be one (1) from the date of such discovery.

Tenn. Code Ann. § 29-26-116(a)(1)(2)(2000).

Prior to the adoption of the discovery rule by the legislature, medical malpractice actions were subject to the same one-year statute of limitations applicable to other negligence actions. *Stanbury v. Bacardi*, 953 S.W.2d 671, 674 (Tenn. 1997). This required that the claim be filed within one year of the date of the negligent act causing injury. *Id.* Under the discovery rule, however, the determination of when the statute of limitations begins to run requires a determination of when the plaintiff had sufficient knowledge that she had sustained an injury. *Id.* at 678. The inquiry does not require that the plaintiff had knowledge that a "breach of the appropriate legal standard" had occurred. *Roe v. Jefferson*, 875 S.W.2d 653, 657 (Tenn. 1994). The statute of limitations begins to run when the plaintiff is "aware of the facts sufficient to put a reasonable person on notice that he has suffered an injury *as a result of wrongful conduct*," and the plaintiff knows the identity of the person who engaged in the conduct. *Id.* at 656-57 (emphasis added). Thus, the statute does not begin to run until the plaintiff had "sufficient information" to put him on notice that he has suffered an injury and that the injury was caused by a wrongful act. *Id.* at 658. The determination of when a reasonable person should know that his injury was caused by some wrongful or negligent act is generally a question for the trier of fact. *See, e.g., McClellan v. Stanley*, 978 S.W.2d 943, 945 (Tenn. Ct. App. 1998).

In the case before us, it is undisputed that in August 1995, Dr. Blanton performed successful endoscopic carpal tunnel surgery on Ms. McIntosh's right wrist. This surgery gave Ms. McIntosh immediate relief. On September 8, 1998, Dr. Blanton performed endoscopic carpal tunnel surgery on Ms. McIntosh's left wrist. This surgery was unsuccessful, however. Ms. McIntosh's condition did not improve, and she suffered a loss of feeling in two fingers. On February 4, 1999, Dr. Blanton performed a second, "open" surgery. This surgery also was performed without complication, but Ms. McIntosh continued to experience postoperative loss of sensation and intense pain which progressed up her left arm.

In her complaint, Ms. McIntosh asserts that her ulnar and radial nerves were impaired during the two procedures, causing constant pain and "drawing" of the fingers. She further asserts that she discovered "that the problem to her left hand was of a surgical nature and that negligence was present in the surgical procedure in the conversations with the defendant . . . on April 5, 1999, and further in conversations with an evaluation physician on April 20, 1999, all within one (1) year from the date of the filing of th[e] Complaint[.]"

Dr. Blanton, however, asserts, that he explained the cause of the failure of the first, endoscopic procedure (i.e. that he had cut the palmar fascia instead of the transverse carpal ligament) to Ms. McIntosh during a post-operative visit on February 12, 1999. He further submits that he told Ms. McIntosh that, although he could not determine the precise cause of her pain after the second procedure, he believed it could it could be a result of one or both of the surgeries.

On April 5, 1999, Dr. Blanton referred Ms. McIntosh to physicians at the Union City Semmes-Murphy Clinic for further evaluation. In her brief to this Court, Ms. McIntosh refers to her affidavit of August 29, 2003, in which she submits that it was not until meeting with another physician, Dr. Muhlbauer, on April 20, 1999, that she discovered that her injury was caused by some

wrongful or negligent act. She submits that Dr. Blanton explained the risks, benefits, and potential complications of the surgery to her, and that she understood that the surgeries might not be successful. She contends that, although Dr. Blanton indicated the surgeries might be the cause of her pain, he presented it as part of the ordinary risks and complications of the procedures. She submits that she had no reason to believe Dr. Blanton was negligent or did something wrong until she met with Dr. Muhlbauer on April 20, 1999. Ms. Blanton asserts: "Of all those who saw or did anything up to that point, Dr. Muhlbauer was the first to give me an opinion Dr. Blanton's negligent acts, not 'risks or complications from surgery,' could be the cause of my hand's condition."

We note, however, that the record also contains an earlier affidavit of Ms. McIntosh made on November 30, 2000. In her affidavit of November 2000, Ms. McIntosh states:

> [i]n April 5, 1999, I first learned that the problems surrounding the pain and numbness in my hand was probably caused by a surgical error. I was advised of this fact by my treating physician, M.A. Blanton, III, M.D.

Thus, on April 5, 1999, Ms. McIntosh was aware that her injury was the result of some surgical error, although she arguably was not aware that Dr. Blanton's conduct may have been wrongful or negligent.

Ms. McIntosh further argues that Dr. Blanton had a "reassuring attitude" and that he "always kept discussions in the light of normal, non-negligent risks." She further submits, that in light of her age (77) and education (through the 11th grade), considering all the risks, and Dr. Blanton's reassuring manner, she had no reason to believe he was negligent. Ms. McIntosh's argument, as we perceive it, is that although she knew something was wrong with the surgical procedure, that it had failed, she did not know the failure was caused by wrongful conduct on the part of Dr. Blanton until after visiting Dr. Muhlbauer on April 20, 1999.

Dr. Blanton's medical notes regarding his discussions with Ms. McIntosh state that on February 12, 1999, he "went over the cause for failure of the primary endoscopic release, and . . . told her that [he] anticipated a good recovery at this point." The February notes state that Dr. Blanton advised Ms. McIntosh to return in one month. The notes do not indicate, however, precisely what Dr. Blanton told Ms. McIntosh regarding the nature of the failure of the endoscopic procedure. Further, we note that in September 1998, Dr. Blanton advised Ms. McIntosh that her condition might not be fully relieved by the endoscopic procedure, and that further surgery might be required.

Dr. Blanton's notes from March and April, 1999, indicate that although Dr. Blanton believed, as he indicated to Ms. McIntosh, that the problem was related to the surgery, he did not indicate that there had been any surgical error per se. His March 1999 notes state:

> The story [Ms. McIntosh's] sounds a little like there may be degree of reflex sympathetic dystrophy involved here . . . . my belief is that we are going to have to go with a nerve conduction study and the EMG of both of the ulnar and the median

nerves. I can't get past this distribution. . . . this could be a double crush syndrome. We will have to delay and see what develops here.

Dr. Blanton's April 5, 1999, and April 22, 1999, notes also offer no indication that he communicated to Ms. McIntosh that he believed he had erred. The April 22 notes, made after Ms. McIntosh met with Dr. Muhlbauer, state:

> My impression, at the time of open surgery was, that the ulnar nerve was intact, yet it clearly is dysfunctional now with atrophy of the first dorsal interosseous and virtual complete sensory loss. . . . I gave her some tips on rehabilitation using the sponge and warm water, etc. . . . I told her the best thing I thought we could do now is wait until I got the report back from Dr. Muhlbauer's office.

Dr. Blanton's later notes, made on May 7, state: "I saw Mary McIntosh today and told her that due to the concern over liability issues that I felt I had not given her my best advice at the time of our last meeting. . . ."

Having reviewed the record, and viewing the evidence in the light most favorable to the nonmoving party, we believe a genuine issue of material fact exists regarding when Ms. McIntosh reasonably was on notice that her injuries were caused by wrongful conduct and not merely by an unsuccessful procedure. This is a question to be resolved by the trier of fact.

Ms. McIntosh also contends that Dr. Blanton is estopped from asserting the statute of limitations as a defense where he misled her into believing the injuries were not caused by negligence, but were part of the normal risks of the procedure. Ms. McIntosh's argument, as we perceive it, is that she could not have discovered that she had suffered an injury as a result of wrongful conduct because Dr. Blanton led her to believe that her injury was part of the normal risks associated with surgical procedures. This is not a discrete issue, but an element in the consideration of when, considering all the circumstances, Ms. McIntosh reasonably was on notice that her injuries were caused by alleged wrongful conduct.

### *Holding*

In light of the foregoing, we reverse the trial court's award of summary judgment to Dr. Blanton based on the statute of limitations. We remand this case to the trial court for further proceedings consistent with this opinion. Cost of this appeal are taxed to the Appellee, M. A. Blanton, III, MD, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE

-5-