IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
September 13, 2005 Session

## JANEY FLURI and DAVID FLURI v. FORT SANDERS REGIONAL MEDICAL CENTER, DAWN TAYLOR, MELINDA BLUE, M.D., and VISTA RADIOLOGY, P.C.

**Direct Appeal from the Circuit Court for Knox County**
**No. 1-297-01      Hon. Dale C. Workman, Circuit Judge**

**No. E2005-00431-COA-R3-CV  - FILED NOVEMBER 14, 2005**

The Trial Court granted defendants summary judgment.  Plaintiffs appealed the grant as to defendants Blue and Vista Radiology, arguing the Trial Court erred in granting judgment on grounds that the statute of limitation had run.  We vacate and remand.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Vacated.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and WILLIAM H. INMAN, SR.J., joined.

Luis C. Bustamante, and Robert L. Vance, Knoxville, Tennessee, for appellants.

Andrew R. Tillman and Joshua R. Walker, Knoxville, Tennessee, for appellees.

### OPINION

On May 9, 2001 plaintiffs, Janey Fluri and David Fluri, sued defendants, Fort Sanders Regional Medical Center ("Fort Sanders") and Dawn Taylor, and averred that on December 19, 2000 Ms. Fluri had a replacement of her left knee at Fort Sanders, and the surgery was a success.[1]

---

[1] A deposition of Melinda H. Blue, M.D. indicates that after Mrs. Fluri's knee replacement surgery, medical staff produced x-ray films of Mrs. Fluri's left leg.  Dr. Blue reviewed these films on December 19, 2000, and her report indicated that the x-rays evidenced no abnormalities.

The Complaint further alleged that on December 23, 2000 Ms. Fluri was transferred to a Fort Sanders rehabilitation unit for therapy, and on December 29, 2000, Ms. Taylor, a rehabilitation nurse, fell on Mrs. Fluri causing a severe fracture to Mrs. Fluri's left femur. The Complaint further averred that this fracture required surgical procedures and rehabilitative therapy. At the time the Complaint was filed, Ms. Fluri was unable to walk due to this fracture.

Defendants answered on June 22, 2001, and denied plaintiffs' allegation that Ms. Taylor fell on Ms. Fluri, and as an affirmative defense, that on December 29, 2000 Ms. Taylor asked Ms. Fluri to demonstrate how she rolled from one side without using the handrails, and that Ms. Fluri rolled from her back onto her right side without assistance and then rolled back again and as she rolled to the left side, a "pop" was heard. It was later determined that Ms. Fluri's had fractured her left femur.

Defendants further averred that on January 18, 2001 Ms. Fluri sustained a second fracture of her left femur when she twisted in the seat of her wheel chair when she was alone in her hospital room, which was not caused by any neglect or negligence of the Defendants.

On October 31, 2002, the plaintiffs filed an Amended Complaint which asserted that Ms. Fluri's December 29, fracture was caused by either Ms. Taylor falling on Ms. Fluri or Ms. Fluri rolling towards her left side pursuant to Ms. Taylor's instructions, and it described Ms. Fluri's January 18, 2001 fracture as a "fracture of her left leg through the proximal hole of the screw on the rod, which had been inserted on January 3, 2001, which would not have happened but for the fracture that occurred on December 29, 2000."

Defendants, in their Amended Answer, denied that Ms. Fluri sustained a fracture to her left femur on December 29, 2000, and averred the fracture existed prior to December 29, 2000 and was caused during a surgery on December 19, 2000. The Answer admitted, however, that on January 3, 2001 Ms. Fluri underwent surgery to repair the fracture to her left femur and that Ms. Fluri's January 18, 2001 fracture was a fracture "through the proximal hole of the screw on the rod which had been inserted on January 3, 2001." Following defendant's Answer, the parties conducted discovery which produced evidence that Ms. Fluri's fracture occurred prior to December 29, 2000. On January 27, 2003, Fort Sanders filed Supplemental Responses to Interrogatories, which stated that Thomas M. Koenig, M.D. might be called as an expert witness, and that "Dr. Koenig will testify that the fracture which is claimed by plaintiffs to have occurred on 12/29/00 is actually shown on post-op x-ray film at Fort Sanders on 12/19/00. Plaintiff's fracture probably occurred during surgery by Dr. Brown." On June 18, 2003, George F. Tolhurst, M.D. testified that a faint line was visible on x-ray films taken on both December 19 and December 29, 2000.

On August 25, 2003, the plaintiffs filed a Motion to Amend their Complaint on the basis that plaintiffs "need to amend the Amended Complaint to conform the allegations to evidence that has been obtained since the Amended Complaint was initially filed." This evidence was obtained "through the depositions of the radiologists that reviewed x-ray film at Fort Sanders Regional Medical Center relating to Ms. Fluri's care and treatment." According to the Motion,

"these depositions were obtained in June and July of 2003 as a result of Defendant's Supplemental Responses to Interrogatories filed on January 27, 2003 identifying various expert witnesses and advancing the theory that 'plaintiff's fracture probably occurred during surgery by Dr. Brown on December 19, 2000' and 'the post-op x-ray film obtained at Fort Sanders on December 19, 2000 shows the fracture of Ms. Fluri's left Femur.'"

The Amended Complaint, which was allowed, added Dr. Melinda Blue and Vista Radiology to the list of Defendants. Plaintiffs averred that Dr. Blue is a radiologist employed by Vista, and that the x-ray report prepared by Dr. Blue, after replacement surgery, did not disclose any abnormalities. In the alternative, that the rehabilitative session aggravated a pre-existing condition which Fort Sanders' radiologists failed to disclose. The Complaint elaborated "[i]f Defendant's radiologist had disclosed a fracture or the possibility of a fracture from the review of the x-ray films obtained on December 19, 2000, Ms. Fluri's plan of treatment would have been different thereby avoiding and/or limiting the injury sustained by the Plaintiff." The Complaint further averred that "Plaintiffs did not discover the existence of facts which support the action against the Defendants, Dr. Blue and Vista, until the Defendants, Fort Sanders and Taylor, filed an answer to the Amended Complaint on December 11, 2002. Before December 11, 2002, Plaintiffs were not aware of nor were Plaintiffs on notice of the origin of the injury as attributed to the conduct of the Defendants, Dr. Blue and Vista." Fort Sanders and Taylor answered the Amended Complaint, and averred that immediately after Ms. Fluri's December 19, 2000 knee replacement surgery, a post-operative x-ray film showed a fracture to Ms. Fluri's left femur, and Dr. Blue failed to report this fracture. The Answer also denied Dr. Blue was an agent of the hospital, and that Dr. Blue was an independent contractor, as were all physicians associated with Vista. Further, that x-ray film made after the surgery on December 19, 2000 "could have been and should have been discovered by plaintiffs prior to the filing of the original Complaint herein." In the Answer of Dr. Blue and Vista Radiology, they admitted that Dr. Blue interpreted two x-rays of Ms. Fluri's left knee, but they denied that there was any pre-existing condition visible on the x-rays and they denied that there was any negligent failure to disclose a pre-existing condition. Further, they denied that Dr. Blue's interpretation of the x-rays caused or contributed to a difference in Ms. Fluri's plan of treatment or any additional fracture, injury, or treatment experienced by Ms. Fluri, and that they would rely on any provisions of Title 29, Tenn. Code Ann., chapter 26, part 1, which might be applicable.

On December 2, 2003, Dr. Blue and Vista filed a Motion to Dismiss or for Summary Judgment on the ground the Statutes of Limitations had run. The Motion asserted the only date on which Dr. Blue rendered any medical care to Ms. Fluri was on December 19, 2000 when Dr. Blue prepared an x-ray report regarding Ms. Fluri's left knee which did not disclose any abnormalities. They further asserted that Ms. Fluri's medical records regarding any care received by her on December 19, 2000 were available for review by the plaintiffs since shortly after December 19, 2000, and that the claim was barred by the one-year statute of limitations. Tenn. Code Ann. §§ 29-26-116 and 28-3-104(a)(1).

Plaintiffs' Response to the Motion stated that "the motion is based upon a disputed issue of material fact, i.e., the reasonableness of plaintiffs' actions regarding the discovery of the

tortuous conduct of Melinda Blue, M.D. . . . and Vista Radiology", and "the facts, when viewed in a light most favorable to plaintiffs, clearly show that plaintiffs filed suit against Dr. Blue and Vista within one year of reasonably discovering Mrs. Fluri's injury and the wrongful act of the defendants." And further, "defendants did not file a separate statement of undisputed material facts as required by Rule 56.03 of the Tennessee Rules of Civil Procedure." After a hearing on the Motion, on January 16, the Trial Court entered an Order granting the Motion to dismiss plaintiffs' claims against Dr. Blue and Vista Radiology.

Subsequently, Orders dismissing the other parties to the lawsuit were filed, and on February 16, 2005, plaintiffs filed a Notice of Appeal from the Order granting summary judgment to Melinda H. Blue, M.D., and Vista Radiology.

Plaintiffs' issues on appeal are whether the Trial Court erred in granting summary judgment on the grounds of the statute of limitations, and whether the Court erred in granting summary judgment when the moving party did not include a statement of undisputed facts in support of their motion.

"The standard of review of a summary judgment determination is *de novo* without any presumption of correctness accorded the trial court's judgment." *Guy v. Mutual of Omaha Ins. Co.*, 79 S.W.3d 528, 534 (Tenn. 2002). This Court's "only task in deciding a motion for summary judgment is to determine whether 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" (quoting Tenn. R. Civ. 56.04). "If there is doubt as to whether or not such genuine issue remains for trial, the summary judgment must be overruled." *Buddy Lee Attractions, Inc. v. William Morris Agency, Inc.*, 13 S.W.3d 343, 347 (Tenn. Ct. App. 1999).

On appeal, plaintiffs argue there are genuine issues of material fact regarding whether the Plaintiffs filed suit against these defendants within one year of reasonably discovering the tortuous conduct of the Defendants. Defendants respond that "[t]he Trial Court was correct in granting summary judgment because Plaintiff[s] had at the very least constructive notice of all potential claims." The Defendants in their brief, reasoned that "the extremely close temporal proximity of the fracture to the knee replacement surgery placed Plaintiff[s] on notice that a problem may have existed from the time of surgery on December 19, 2000, creating a duty to investigate what happened immediately before, during, and immediately after her surgery."

Tenn. Code Ann. § 29-26-116(a)(1)(2) is the codification of the discovery rule adopted by the Tennessee Supreme Court in *Teeters v. Currey*, 518 S.W.2d 512 (Tenn. 1974). The Supreme Court has interpreted the statute as follows:

> [T]he statute of limitations in a medical malpractice case is tolled until the plaintiff "discovered, or reasonably should have discovered, (1) the occasion, the manner, and the means by which a breach of duty occurred that produced his injuries; and (2) the

identity of the defendant who breached the duty.

*Stanbury v. Bacardi*, 953 S.W.2d 671, 677 (Tenn. 1997) (quoting *Foster v. Harris*, 633 S.W.2d 304, 305 (Tenn. 1982)). In other words, the statute of limitations commences "when the plaintiff is 'aware of the facts sufficient to put a reasonable person on notice that he has suffered an injury *as a result of wrongful conduct*,' and the plaintiff knows the identity of the person who engaged in the conduct." *McIntosh v. Blanton*, 164 S.W.3d 584, 586 (Tenn. Ct. App. 2004) (quoting *Roe v. Jefferson*, 875 S.W.2d 653, 656-57 (Tenn. 1994)). A plaintiff's knowledge that "the appropriate legal standard" has been breached is not a prerequisite for commencement of the statute of limitations. *Roe*. In addition, the commencement of the statute of limitations does not wait for the plaintiff to acquire actual knowledge of "all the injurious effects and consequences of the alleged wrong." *Shadrick v. Coker*, 963 S.W.2d 726, 733 (Tenn. 1998). Thus, the statute of limitations is tolled only during that period of time when the plaintiff has neither actual nor constructive knowledge of (1) the injury, (2) the wrongful conduct causing that injury, and (3) the identity of the party or parties who engaged in that wrongful conduct.

The determination of when a plaintiff had constructive knowledge of these facts, however, "is generally a question for the trier of fact." *McIntosh*, 164 S.W.3d at 586; *see also Matz v. Quest Diagnostics Clinical Labs., Inc.*, No. E2003-00167-COA-R3-CV, 2003 WL 22409452, at *4 (Tenn. Ct. App. 2003); *McClellan v. Stanley*, 978 S.W.2d 943, 945 (Tenn. Ct. App. 1998).

Plaintiffs' Complaint alleged that Ms. Fluri's injury occurred on December 29, 2000, and therefore, the plaintiffs had actual knowledge of the injury on that date. As for the allegedly wrongful conduct causing the injury and the identities of those who engaged in that conduct, Ms. Fluri stated in an affidavit:

> Prior to the receipt of Fort Sanders' supplemental responses to interrogatories filed on January 27, 2003 and Dr. Tolhurst's testimony on June 18, 2003, I did not have any facts nor did I possess any knowledge that would have indicated to me that Dr. Blue and Vista Radiology, P.C. had failed to properly interpret the x-ray film that was obtained on December 19, 2000.

Viewing this statement in the light most favorable to the plaintiffs and drawing all reasonable inferences in plaintiffs' favor, the plaintiffs had actual knowledge of the allegedly wrongful conduct and the identity of those who engaged in this conduct on June 18, 2003. If commencement of the statute of limitations were based on actual knowledge alone, the statute would commence to run on that date. However, commencement of the statute of limitations is not based on actual knowledge alone. The issue thus becomes is whether the plaintiffs had constructive knowledge of the requisite facts prior to her actual knowledge. Ms. Fluri's affidavit states that:

> [t]hroughout the course of my care and treatment, Dr. Brown indicated that the surgery on December 19, 2000 . . . was successful. I was never informed that the surgery on December 19, 2000 had allegedly caused a fracture."

Plaintiffs argue that by June 22, 2001 a reasonable person would have no factual basis to believe that Dr. Blue and Vista had engaged in any allegedly wrongful conduct. Thus, plaintiffs argue that a reasonable person would have no factual knowledge of Dr. Blue and Vista's wrongful conduct until June 18, 2003, when Dr. Tolhurst's deposition on that date revealed that he observed a faint line on the x-ray films taken on both December 19 and December 20, 2000. In response, defendants argue that plaintiff had constructive knowledge of Dr. Blue's and Vista's allegedly wrongful conduct on December 29, because:

> the extremely close temporal proximity of the fracture to the knee replacement surgery placed plaintiffs on notice that a problem may have existed from the time of the surgery on December 19, creating a duty to investigate what happened immediately before, during and immediately after her surgery.

They emphasize the fact that Ms. Fluri's injury to her left leg occurred only ten days after she had surgery to replace her left knee. They also argue that "plaintiff's medical records from the December 19 surgery and all subsequent treatments were available for inspection".

Thus, the heart of the dispute is determining when a reasonable person in plaintiff's circumstances would have investigated the possibility of Dr. Blue's and Vista's alleged wrongful conduct. This is a question of fact not appropriate for resolution through summary judgment. As stated above, the plaintiffs argue a reasonable person would not have had reason to investigate this possibility until December 12, 2002, and would not have had a factual basis for the claim until June 18, 2003. While defendants argue that a reasonable person would have reason to investigate this possibility on December 29, 2000.

"As our Supreme Court has recognized, a summary judgment is not the appropriate vehicle for resolving conflicting inferences reasonably drawn from the facts—rather, its purpose is to resolve controlling issues of law." *Matz v. Quest Diagnostics Clinical Labs., Inc.*, No. E2003-00167-COA-R3-CV, 2003 WL 22409452, at *4 (Tenn. Ct. App. 2003) (citing *Bellamy v. Federal Express Corp.*, 749 S.W.2d 31 (Tenn. 1988)). Whether Plaintiffs had constructive knowledge of Defendants' allegedly wrongful conduct under these circumstances is an issue of fact, and summary judgment was inappropriately granted because the facts and their reasonable inferences support more than one reasonable conclusion. *Seavers v. Methodist Med. Ctr. of Oak Ridge*, 9 S.W.3d 86, 91 (Tenn. 1999) (stating that summary judgment is only appropriate when the facts lead to only one reasonable conclusion); *Buddy Lee Attractions, Inc. v. William Morris Agency, Inc.*, 13 S.W.3d 343, 347 (Tenn. Ct. App. 1999) (stating that summary judgment must be overruled "if there is doubt as to whether or not . . . [a] genuine issue remains for trial").

The issue of whether the Trial Court erred in granting the Motion for Summary Judgment without the Motion including a statement of undisputed facts in support is rendered moot by our vacating the Summary Judgment.

For the foregoing reasons, we vacate the Summary Judgment and remand to the Trial

Court for further proceedings.  The cost of the appeal is assessed to Melinda Blue, M.D., and Vista Radiology, P.C.

_____
HERSCHEL PICKENS FRANKS, P.J.