# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### November 3, 2009 Session

## VICTORIA DUTTON, ET AL. v. FARMERS GROUP, INC., ET AL.

**Appeal from the Circuit Court for Knox County**
**No. 3-278-08      Wheeler A. Rosenbalm, Judge**

---

### No. E2009-00746-COA-R3-CV - FILED JUNE 22, 2010

---

Plaintiffs' home flooded and incurred severe water and mold damage when the hot water tank burst. Plaintiffs began to experience varying illnesses after moving back into the home. Despite Defendants' assurances that the home was safe, three years after moving back into the home, Plaintiffs discovered that their home was contaminated with toxic mold. Thereafter, Plaintiffs filed suit against Defendants alleging various claims. Defendants moved to dismiss the Complaint asserting that the statute of limitations barred the claims. After a hearing, the trial court agreed and dismissed Plaintiffs' Complaint. Plaintiffs then filed a motion to alter or amend the judgment; the trial court denied the motion. Plaintiffs appeal. We reverse.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed; Case Remanded

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which HERSCHEL P. FRANKS, P.J., joined. CHARLES D. SUSANO, JR., J., filed a concurring opinion.

David T. Black, Maryville, Tennessee, for the appellants, Victoria Dutton, Geoffrey Carel, and Dezirae Carel.

Bruce A, McMullen, Kenny Saffles, and Stacie Winkler, Knoxville, Tennessee, for the appellees, Farmers Group, Inc. and Mid-Century Insurance Co.

Daniel M. Gass and P. Alexander Vogel, Knoxville, Tennessee, for the appellee, East Tennessee Restoration.

Ellis A. Sharp and Zachary B. Tenry, Knoxville, Tennessee, for the appellee, ServPro of West Knoxville.

John M. Norris, Strawberry Plains, Tennessee, for the appellee, Air Doctor.


**OPINION**

**I. FACTUAL BACKGROUND**

The home of Victoria Dutton, Geoffrey Carel, and Dezirae Carel (collectively "Plaintiffs") flooded after their hot water tank burst. As a result, Plaintiffs' home experienced extreme water and mold damage. On the day of the flooding, January 10, 2002, Plaintiffs notified their home insurance carrier, the Farmers Group, Inc. ("Farmers") and Mid-Century Insurance Company ("Mid-Century"), of the damage to their home.[1] ServPro of West Knoxville ("ServPro") was hired to remediate Plaintiffs' home. ServPro conducted water extraction, cleanup, and restoration in Plaintiffs' home. After ServPro's initial remediation of the home, Plaintiffs called Farmers/Mid-Century to report that ServPro's cleanup of the home was insufficient. After a Farmers/Mid-Century representative determined that fans were needed to dry out the home, ServPro placed two larger dryer fans in Plaintiffs' residence.

On January 19, 2002, Plaintiffs again notified Farmers/Mid-Century that ServPro's work in the home was insufficient. At that time, Plaintiffs reported mold growing on the baseboards and walls of the home. Representatives of Farmers/Mid-Century subsequently visited the home and denied alternative housing for Plaintiffs.

Larry Freeman, Regional Manager of the Provident Group, Inc. ("Provident") conducted toxic mold sampling in Plaintiffs' home on January 29, 2002. Those tests revealed that the home was 100% contaminated with mold spores in extremely toxic amounts making the home unsafe for human occupation. Thereafter, Farmers/Mid-Century provided Plaintiffs with alternative living arrangements while further remediation and testing were conducted.

After the remediation of the home was complete, Farmers/Mid-Century informed Plaintiffs that it was safe for them to return as their home had passed a toxic mold spore sampling test. Relying on that representation, Plaintiffs returned to their home in March 2002. Shortly after their return, Plaintiffs became ill.

---

[1]Farmers claims that it is not a proper party to this lawsuit. Mid-Century is the company responsible for writing the home owners insurance policy issued to Mr. Carel. According to Mid-Century, Farmers had no involvement in handling Plaintiffs' claim. Nonetheless, Farmers and Mid-Century jointly filed a brief and addressed the issues raised in this appeal due to accepting the facts stated in the Complaint as true.

Ms. Dutton and Mr. Carel subsequently filed suit against Farmers, Mid-Century, Provident, ServPro, and East Tennessee Restoration ("ETR") in October 2005. In the complaint, they claimed to have suffered damages as a result of the defendants' failure to remediate the water damage in their home. Eventually, the suit was voluntarily non-suited on June 15, 2007.

On June 16, 2008, Ms. Dutton, Mr. Carel, and Ms. Carel,[2] as pro se litigants, filed the instant lawsuit against Farmers, Mid-Century, Provident, James D. Wilson, Larry Freeman, ServPro, ETR, Mold Masters, Air Doctor, and Provident Group Laboratory (collectively "Defendants"),[3] but the Complaint at issue in this appeal did not reference the 2005 lawsuit. In the Complaint, Plaintiffs allege various claims including negligence, intentional and negligent misrepresentation, and violations of the Tennessee Consumer Protection Act ("TCPA").

In response, Defendants filed separate motions to dismiss, or, alternatively, motions for summary judgment, asserting that the statute of limitations barred Plaintiffs' claims. On two separate occasions, the trial court continued hearings on the motions to dismiss to allow time for Plaintiffs to retain counsel. After a hearing on the motions, the trial court granted the motions and dismissed Plaintiffs' claims pursuant to Rule 12.02 and Rule 56 of the Tennessee Rules of Civil Procedure.[4] A final Order dismissing Plaintiffs' claims was entered on December 22, 2008 ("December Order").

The following day, ETR filed a motion to substitute the order and final judgment pursuant to Rule 60 of the Tennessee Rules of Civil Procedure. ETR filed the motion because a rough draft of the proposed order granting the motions to dismiss was inadvertently submitted to the trial court instead of the final version. The trial court granted ETR's Rule 60 motion to substitute the original Order and entered a second final Order on

---

[2]Dezirae Carel is the minor child of Geoffrey Carel, and she was not a party to the original lawsuit filed in 2005. Defendants contend that she is not a proper party to this appeal because she was not a part of the original lawsuit and the statue of limitations barred her causes of action. We find Defendants' assertions to be without merit. Because Dezirae is a minor, the statute of limitations is tolled until she reaches the age of eighteen. *See* Tenn. Code Ann. § 28-1-106 (2000).

[3]On appeal, Farmers, Mid-Century, and ETR are the only parties that filed appellate briefs in support of their positions; in their briefs, each party adopted the additional arguments made by other Defendants. Air Doctor and ServPro filed motions pursuant to Tenn. R. App. P. 27(j) to join the responsive briefs of the other Defendants, which this court permitted and granted both motions.

[4]Although the parties assert that the trial court dismissed the Complaint pursuant to Rule 12.03 of the Tennessee Rules of Civil Procedure, the Final Order states that the Complaint was dismissed pursuant to Rule 12.02 and Rule 56.

January 9, 2009 ("January Order").

Plaintiffs then filed a motion to alter or amend the judgment on February 6, 2009. After specifically finding that the motion to alter or amend judgment was timely filed, the trial court denied the motion on March 23, 2009. On April 8, 2009, Plaintiffs filed a notice of appeal, challenging the trial court's dismissal of their claims.

## II. ISSUES

Plaintiffs raise the following issues on appeal, which we restate:

1.  Whether the trial court erred in finding that Plaintiffs should have discovered their injuries in March 2002.

2.  Whether the trial court erred in finding that the statute of limitations barred Plaintiffs' claims, and as a result, dismissing Plaintiffs' claims pursuant to Rule 12.02 and Rule 56 of the Tennessee Rules of Civil Procedure.

Defendants raise the following issue on appeal:

1.  Whether Plaintiffs timely filed the motion to alter or amend the final judgment.

## III. STANDARD OF REVIEW

When this court reviews a trial court's ruling on a motion for judgment on the pleadings, we must accept as true "all well-pleaded facts and all reasonable inferences drawn therefrom" alleged by the parties opposing the motion, which in this case are Plaintiffs. *Cherokee Country Club, Inc. v. City of Knoxville*, 152 S.W.3d 466, 470 (Tenn. 2004); *McClenahan v. Cooley*, 806 S.W.2d 767, 769 (Tenn. 1991). However, under Rule 12.03 of the Tennessee Rules of Civil Procedure, a motion for judgment on the pleadings becomes the equivalent to a motion for summary judgment pursuant to Rule 56 if "matters outside the pleadings are presented to and not excluded by the court[.]" Tenn. R. Civ. P. 12.03.

Defendants presented their motions to dismiss pursuant to Rule 12.02 or alternatively to Rule 56 of the Tennessee Rules of Civil Procedure. Our review of the Final Order indicates that the trial court considered the motions as ones for summary judgment. The Final Order states that the trial court considered "the arguments made on behalf of the parties" and "the record as a whole." It appears that the trial court resolved these issues upon summary judgment. Therefore, we employ the standard of review for summary judgment.

*See Maggart v. Almany Realtors, Inc.*, No. M2005-02532-COA-R3-CV, 2007 WL 2198204, at *2 (Tenn. Ct. App. M.S., July 26, 2007).

In reviewing a trial court's grant of a motion for summary judgment, this court must determine whether the requirements of Tenn. R. Civ. P. 56 have been met. *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 88 (Tenn. 2000). Our inquiry involves only a question of law with no presumption of correctness attached to the trial court's judgment. *Id.* Under Tenn. R. Civ. P. 56.04, "[s]ummary judgment is appropriate when the moving party can show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law." *Hannan v. Alltel Publ'g*, 270 S.W.3d 1, 5 (Tenn. 2008) (citing Tenn. R. Civ. P. 56.04; *Byrd v. Hall*, 847 S.W.2d 208, 214 (Tenn. 1993)). In Tennessee, the moving party who does not bear the burden of proof at trial must either:

    (1)    affirmatively negate an essential element of the nonmoving party's claim; or

    (2)    show that the nonmoving party cannot prove an essential element of the claim at trial.

*Hannan*, 270 S.W.3d at 9. A "conclusory assertion" is not enough to shift the burden. *Id.* at 5 (quoting *Byrd*, 847 S.W.2d at 215). It is also not enough for the moving party to "cast doubt on a party's ability to prove an element at trial." *Hannan*, 270 S.W.3d at 8.

Therefore, a properly supported motion for summary judgment demonstrates that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. *See Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 83 (Tenn. 2008); *see also Staples*, 15 S.W.3d at 88; *McCarley v. W. Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998). If the moving party fails to make a properly supported motion, the non-movant's burden to produce either supporting affidavits or discovery materials is not triggered, and the motion for summary judgment fails. *See Martin*, 271 S.W.3d at 83. If the moving party makes a properly supported motion, then the non-moving party is required to produce evidence of specific facts establishing that genuine issues of material fact exist. *Id.* at 84 (supporting citations omitted).

## IV. DISCUSSION

### Motion to Alter or Amend Judgment

Before reaching the merits of this appeal, we address whether this court has jurisdiction to hear the appeal. Relying on the date of entry for the first judgment (i.e. the

December Order), Defendants contend that Plaintiffs failed to timely file the motion to alter or amend the judgment and the subsequent notice of appeal. Thus, to determine whether the appeal is timely filed, we must decide which of the two orders controls.

An aggrieved party has thirty days from the entry of judgment to file either a post-trial motion or a notice of appeal. *See* Tenn. R. Civ. P. 59.02[5]; Tenn. R. App. P. 4(a)-(b).[6] Under Tennessee Rule of Civil Procedure 59.04, a motion to alter or amend a judgment is timely if "filed and served within thirty days after entry of the judgment." "Entry of judgment" is defined by Rule 58 of the Tennessee Rules of Civil Procedure as:

> Entry of a judgment or an order of final disposition is effective when a judgment containing one of the following is marked on the face by the clerk as filed for entry:
>
> (1) the signatures of the judge and all parties or counsel, or
>
> (2) the signatures of the judge and one party or counsel with a certificate of counsel that a copy of the proposed order has been served on all other parties or counsel, or
>
> (3) the signature of the judge and a certificate of the clerk that a copy has

---

[5]"A motion for new trial and all other motions permitted under this rule shall be filed and served within 30 days after judgment has been entered in accordance with Rule 58." *See* Tenn. R. Civ. P. 59.02

[6]"(a) Generally. In an appeal as of right to the Supreme Court, Court of Appeals or Court of Criminal Appeals, the notice of appeal required by Rule 3 shall be filed with and received by the clerk of the trial court within 30 days after the date of entry of the judgment appealed from; however, in all criminal cases the "notice of appeal" document is not jurisdictional and the filing of such document may be waived in the interest of justice. The appropriate appellate court shall be the court that determines whether such a waiver is in the interest of justice. Any party may serve notice of entry of an appealable judgment in the manner provided in Rule 20 for the service of papers.

(b) Termination by Specified Timely Motions in Civil Actions. In a civil action, if a timely motion under the Tennessee Rules of Civil Procedure is filed in the trial court by any party: (1) under Rule 50.02 for judgment in accordance with a motion for a directed verdict; (2) under Rule 52.02 to amend or make additional findings of fact, whether or not an alteration of the judgment would be required if the motion is granted; (3) under Rule 59.02 for a new trial; (4) under Rule 59.04 to alter or amend the judgment; the time for appeal for all parties shall run from the entry of the order denying a new trial or granting or denying any other such motion." *See* Tenn. R. App. P. 4(a)-(b).

been served on all other parties or counsel.

Tenn. R. Civ. P. 58.

This court has previously tackled the issue of the entry of successive judgments. In *Arfken & Assoc. v. Simpson Bridge Co.,* 85 S.W.3d 789 (Tenn. Ct. App. 2002), this court held that the 30-day period provided in the rules began to run upon the entry of the first judgment because the later judgment was identical in all respects. Noting the similarities in the two judgments, the majority in *Arfken* stated:

> [T]he subsequent Final Order is an exact copy, *i.e.,* the exact wording, spacing, paragraphing, indenting, punctuation, etc., of the first Final Order. A side-by-side comparison of these two documents leads to the inescapable conclusion that one is a photostatic copy of the other. It is clear to the naked eye that the attorneys' signatures on the documents – and both documents contain the signatures of counsel for each of the parties – are precisely identical.

*Id.* at 790. Thereafter, in *Edwards v. Banco Lumber Co.*, 101 S.W.3d 69 (Tenn. Ct. App. 2002) (perm. to appeal denied), this court again tackled the entry of two separate judgments. In *Edwards*, this court held the 30-day period began to run from the entry of the second judgment because the judgments were not "mirror images of each other." *Id.* at 75.

Recently, our Supreme Court also addressed this very issue in *Ball v. McDowell*, 288 S.W.3d 833 (Tenn. 2009). In *Ball*, the trial court entered a final Order signed only by the plaintiffs' counsel. *Id.* at 835. Two weeks later, the trial court entered another final judgment signed by all counsel. *Id.* The defendants filed a motion to alter or amend the judgment 42 days after the initial order. *Id.* In response, the plaintiffs argued that the motion to alter or amend was untimely, but the trial court denied the motion without "address[ing] the issue of competing judgments." *Id.* The defendants appealed, and the Court of Appeals held that the motion to alter or amend was timely, and thus, the appeal was timely. *Id.* at 836. The Tennessee Supreme Court reversed and held:

> To determine which of the judgments entered in this case constitutes the final judgment, we must focus on whether the second judgment affected any of the parties' substantive rights and obligations settled by the first judgment. In this case, the first judgment resolved all of the parties' claims, leaving nothing for the trial court to adjudicate. The second judgment was identical in substance to the first judgment, with only the signature of Defendants' counsel added. We therefore conclude that the first judgment constituted the final judgment that triggered the thirty-day period for filing post-trial motions.

*Id.* at 837 (citation omitted). Key to the disposition of *Ball*, *Arfken*, and *Edwards* was whether the two judgments were identical.

In the case at bar, the two judgments at issue are far from identical. The first judgment – the December Order – consists of three pages that summarize the procedural history and dismiss the action. In contrast, the second judgment – the January Order – covers more details than the first judgment and totals four pages. The second judgment describes Plaintiffs' claims, provides the trial court's findings of fact, and outlines the reasons for the dismissal of the Complaint. In fact, the trial court specifically found in the January Order that the "discovery rule" applied to this case and that "the evidence . . . establishes that Plaintiffs were aware of facts sufficient to put a reasonable person on notice that they had suffered an injury . . . ." The December Order contains no such language. Another notable difference in the two judgments is the language used to assess costs. While both judgments tax the costs to Plaintiffs, the January Order differs from the December Order and states:

> The costs of this cause will be assessed at the ultimate conclusion of the case as to all defendants but in no event will any of these Defendants be taxed with costs.

In light of the significant differences among the two judgments, which are by no means "mirror images" of each other, we find that the second judgment – the January Order – controls and supercedes the December Order. *See Edwards*, 101 S.W.3d at 75. We do not find Farmers' argument that the two judgments are substantively the same in the effect on Plaintiffs' rights to be meritorious. In both *Ball* and *Arfken*, the only differences in the orders at issue were the signatures of either counsel or the trial judge; in all other respects the orders were identical. *See Ball*, 288 S.W.3d at 837; *Arfken*, 85 S.W.3d at 790-91 (observing that "The subsequent Final Order changes nothing; it does not even "tweak" the first Final Order."). In the instant case, the differences between the two judgments are pervasive. Equally important, the record demonstrates that the trial court intended for the January Order to be the operative judgment. First, in the order granting Farmers' motion to revise the December Order, the trial court noted that the January Order "substitute[s]" the original December Order. Second, the trial court specifically found that Plaintiffs' motion to alter or amend the judgment, filed on February 6, 2009, was "timely filed" before overruling the motion. In order to make such a finding, the motion had to be filed within thirty days of the entry of the final judgment. Tenn. R. Civ. P. 59.04.

Accordingly, we conclude that the date of entry for the January Order triggered the thirty-day period for post-judgment motions; we agree with the trial court that Plaintiffs' motion to alter or amend the judgment was timely filed.

Having concluded that the January Order controls, we next discuss the merits of Plaintiffs' appeal.

**Discovery Rule and Statute of Limitations**

Plaintiffs contend that the trial court erred in holding that the statute of limitations barred their claims and in finding that they should have discovered their injuries in March 2002. As the trial court found, the gravamen of Plaintiffs' claims are personal injury, and there is a one-year statute of limitations for personal injury causes of action. *See* Tenn. Code Ann. § 28-3-104(a)(1) (2000).[7] In Tennessee, the discovery rule "provides that a cause of action accrues and the statute of limitations begins to run when the plaintiff knows or in the exercise of reasonable care and diligence should know that an injury has been sustained as a result of wrongful or tortious conduct by the defendant." *Fahrner v. SW Mfg., Inc.*, 48 S.W.3d 141, 143 (Tenn. 2001) (citing *Kohl & Co. v. Dearborn & Ewing*, 977 S.W.2d 528, 532 (Tenn. 1998). When applying the discovery rule, determining "[w]hether the plaintiff exercised reasonable care and diligence in discovering the injury or wrong is usually a fact question for the jury to determine." *Wyatt v. A-Best Co.*, 910 S.W.2d 851, 854 (Tenn. 1995); *McIntosh v. Blanton*, 164 S.W.3d 584, 586 (Tenn. Ct. App. 2004). Nevertheless, if undisputed facts show "that no reasonable trier of fact could conclude that a plaintiff did not know, or in the exercise of reasonable care and diligence should not have known, that he or she was injured as a result of the defendant's wrongful conduct, Tennessee case law has established that judgment on the pleadings or dismissal of the complaint is appropriate." *See Schmank v. Sonic Auto., Inc.*, No. E2007-01857-COA-R3-CV, 2008 WL 2078076, at *3 (Tenn. Ct. App. E.S., May 16, 2008) (citations omitted).

In the instant case, Plaintiffs did not connect their illnesses to toxic mold spores in their home until March 2005. After Defendants made multiple attempts to remediate the home, Plaintiffs returned to their home in March 2002 with the expectation that their home was safe. Shortly after returning home, Plaintiffs began experiencing flu-like symptoms. Defendants claim, at this point, Plaintiffs, as a reasonable people, should have connected their illnesses to the mold contamination in their home. Defendants argue that the discovery rule cannot toll the statute of limitations in this case because Plaintiffs should have exercised due diligence in connecting the cause of their illnesses to their home. *See Shadrick v. Coker*, 963 S.W.2d 726, 733-34 (Tenn. 1998) (explaining that "'It is knowledge of facts sufficient to put a plaintiff on notice that an injury has been sustained which is crucial.'") (citation

---

[7]"The following actions shall be commenced within one (1) year after the cause of action accrued:

(1) Actions for libel, for injuries to the person, false imprisonment, malicious prosecution, breach of marriage promise[.]" Tenn. Code Ann. § 28-3-104.

omitted); *Grindstaff v. Bowman*, No. E2007-001350-COA-R3-CV, 2008 WL 2219274, at *5 (Tenn. Ct. App. E.S., May 29, 2008) (noting that the statute of limitations was not tolled by the discovery rule because plaintiffs failed to use due diligence in investigating their case). In *Grindstaff*, this court explained:

> [T]he plaintiffs cannot simply wait for information regarding a potential defendant to come to them. They have a duty to investigate and discover pertinent facts through the exercise of reasonable care and due diligence. If their lack of knowledge was due to a lack of due diligence, they will not be allowed to plead ignorance and effectively extend the statute of limitations, by way of the discovery rule, simply because they later discovered "new" information that "they reasonable should have discovered" much earlier.

*Id.* at *6 (internal citation omitted).

Defendants maintain that the trial court correctly dismissed Plaintiffs' Complaint pursuant to Rule 12.02 of the Tennessee Rules of Civil Procedure. According to Defendants, Plaintiffs should have reasonably connected their injuries to a mold problem within their home. We disagree.

In Ms. Dutton's affidavit,[8] she averred that she was unaware of the cause of her injuries until Dr. Kevin Blazer informed her that an allergic reaction to her living environment was a possible cause of her medical issues in November 2004. After moving back into their home, Ms. Dutton visited multiple doctors and underwent several tests for her various medical problems that included but were not limited to: neurological problems; respiratory problems; hair loss; a fainting spell that led to the shattering of vertebrae in her back; and a deviated septum. Unlike the trial court, we do not find that Plaintiffs' varying illnesses after the return to their home were sufficient to put them on notice of Defendants' wrongful conduct.

Toxic mold spores were a latent problem concealed within Plaintiffs' home. After the initial issues with Defendants' remediation of their home, Plaintiffs had a good faith belief that the problem was resolved. Plaintiffs did not discover until May 2005 that the linoleum flooring throughout their home was not removed as originally advised in the 2002 cleanup of their home. The linoleum flooring was severely contaminated with toxic mold spores, and Farmers did not remove the linoleum flooring until June 2005. Without the obvious signs of mold contamination in the home, Plaintiffs had no indicators that mold contamination

---

[8]Ms. Dutton's affidavit was attached as an exhibit to Plaintiffs' motion to alter or amend the judgment.

caused their health problems. After Dr. Blazer suggested an allergic reaction to her living environment as a potential cause for Ms. Dutton's illnesses, Plaintiffs then contacted Farmers about retesting their home for toxic mold. Eventually, Farmers retested the home, which confirmed that Plaintiffs' home was contaminated with toxic mold. Until a doctor mentioned a possible allergic reaction as the cause of Ms. Dutton's injuries, Plaintiffs did not have sufficient facts to investigate their potential claims. Under these circumstances, the discovery rule tolled the statute of limitations.

Our finding does not depart from case law concerning a plaintiff's duty to investigate and exercise due diligence in pursuing his or her legal claims. In *Shadrick*, our Supreme Court reached a similar result. In that case, the plaintiff underwent back surgery that involved placing pedicle screws in his back. 963 S.W.2d at 728. Soon after the surgery, the plaintiff began to experience complications for which the treating physician offered varying explanations. *Id.* at 729. Although the plaintiff was aware that he sustained an injury, he did not discover the origin of the injury until well after the statute of limitations expired. *Id.* at 734. For that reason, the Court held that the statute of limitations was tolled by the discovery rule and observed:

> Viewing this evidence in the light most favorable to Shadrick [plaintiff] and allowing all reasonable inferences in his favor, we conclude that there is evidence in the record from which a jury could reasonably find that Shadrick [plaintiff] was reasonably unaware of the wrongful or tortious origin of his injury until December 1993.

*Id.* at 734. In this case, we adopt similar reasoning.

The record demonstrates that Plaintiffs did not have sufficient facts to trigger a duty to investigate until November 2004. Contrary to Defendants' assertions, Plaintiffs' illnesses were varying without any seeming causal link. Plaintiffs did not share similar aliments after moving back into their home in March 2002. Mr. Carel suffered from headaches and flu-like symptoms while Dezirae experienced frequent nose bleeds and problems with her tonsils. When Dr. Blazer suggested that Ms. Dutton's medical issues were caused by an allergic reaction to her environment, Plaintiffs' duty to investigate their potential claims was triggered. From the point of a doctor connecting Ms. Dutton's medical issues to an allergic reaction, i.e. mold, the statute of limitations began to run. Within a year of that discovery, in October 2005, Plaintiffs initiated a lawsuit for personal injury damages. After Plaintiffs' voluntary non-suit in June 2006, the savings statute found in Tenn. Code Ann. § 28-1-105(a),[9] permitted Plaintiffs to re-file their lawsuit in June 2007. It is well settled that a

---

[9]"(a) If the action is commenced within the time limited by a rule or statute of limitation, but the
(continued...)

plaintiff cannot initiate a lawsuit until he or she knows the cause or origin of the claim. *See, e.g., Brandt v. McCord*, 281 S.W.3d 394, 400 (Tenn. Ct. App. 2008) (noting that "Such knowledge includes not only an awareness of the injury, but also the tortious origin or wrongful nature of that injury.") (supporting citations omitted). Unlike our previous holdings, the injuries sustained by Plaintiffs did not have an obvious cause. *See Schmank*, 2008 WL 2078076, at *5 (purchase of warranty) *Grindstaff*, 2008 WL 2219274, at *6 (automobile accident); *but cf. Styles v. Blackwood*, No. E2007-00416-COA-R3-CV, 2008 WL 5396804, at *5 (Tenn. Ct. App. E.S., Dec. 29, 2008) (fraud).

After reviewing the record and viewing the facts in the light most favorable to Plaintiffs, we determine that the discovery rule tolled the statute of limitations until November 2004. The statute of limitations does not bar Plaintiffs' claims because Plaintiffs filed their lawsuit within one-year of discovering that toxic mold contamination in their home caused their medical problems. Accordingly, we reverse the trial court's dismissal of Plaintiffs' claims.

## V. CONCLUSION

For the foregoing reasons, we reverse the judgment of the trial court and remand for further proceedings consistent with this Opinion. Costs are taxed to appellees, Farmers Group, Inc., Mid-Century Insurance Co., East Tennessee Restoration, ServPro of West Knoxville, and Air Doctor.

_____
JOHN W. McCLARTY, JUDGE

[9](...continued)
judgment or decree is rendered against the plaintiff upon any ground not concluding the plaintiff's right of action, or where the judgment or decree is rendered in favor of the plaintiff, and is arrested, or reversed on appeal, the plaintiff, or the plaintiff's representatives and privies, as the case may be, may, from time to time, commence a new action within one (1) year after the reversal or arrest. Actions originally commenced in general sessions court and subsequently recommenced pursuant to this section in circuit or chancery court shall not be subject to the monetary jurisdictional limit originally imposed in the general sessions court." Tenn. Code Ann. § 28-1-105(a) (2000).