IN THE SUPREME COURT OF TENNESSEE

AT NASHVILLE

THERESA STANBURY and spouse, )
JOHN STANBURY, )
  )
    Plaintiffs-Appellants, )
  )
v. )
  )
BRIAN E. BACARDI, )
  )
    Defendant-Appellee )
  )

**FOR PUBLICATION**

**Filed: October 20, 1997**

DAVIDSON COUNTY

Hon. Hamilton V. Gayden, Jr.,
Judge

Appeal No.
01S01-9609-CV-00178

**FILED**

October 20, 1997

Cecil W. Crowson
Appellate Court Clerk

For Plaintiffs-Appellants:
Helen Sfikas Rogers
JONES, ROGERS & FITZPATRICK
Nashville, Tennessee

For Defendant-Appellee:
Lela M. Hollabaugh
MANIER, HEROD, HOLLABAUGH & SMITH
Nashville, Tennessee

O P I N I O N

COURT OF APPEALS AFFIRMED.                    DROWOTA, J.

In this appeal we must determine whether the common law "continuing medical treatment doctrine" remains viable in Tennessee and operates to toll the statute of limitations in medical malpractice cases until the termination of treatment or the physician/patient relationship. Relying upon that doctrine, the plaintiffs, Theresa and John Stanbury, argue that the Court of Appeals erred by dismissing this medical malpractice action which was filed within one year of Theresa Stanbury's last office visit with the defendant Dr. Brian E. Bacardi, a podiatrist. The Court of Appeals found the doctrine inapplicable under the facts of this case, and, in addition observed that its applicability has been eroded or eliminated in this State by judicial and legislative adoption of the discovery rule.[1] In a separate opinion, Judge Koch concluded that the doctrine has been completely subsumed into the discovery rule, and he urged that its abolition be expressly recognized.

We conclude that the common law doctrine of continuing medical treatment has been completely abrogated by adoption of the discovery rule in Tennessee. Accordingly, for the reasons explained hereafter, we affirm the decision of the Court of Appeals dismissing the plaintiffs' complaint.

## BACKGROUND

In 1991, Theresa Stanbury worked on the assembly line at the Saturn Corporation in Spring Hill, Tennessee. She developed a corn on the fifth toe of her right foot which caused discomfort while she stood during her ten hour shift. A

---

[1] Teeters v. Currey, 518 S.W.2d 512, 517 (Tenn. 1974); Tenn. Code Ann. § 29-26-116(a)(2)(1980).

physician removed the corn and recommended that Stanbury consult a podiatrist. On November 22, 1991, Stanbury met with Dr. Brian Bacardi. After a cursory examination, Dr. Bacardi recommended a minor surgical procedure to prevent the fifth toe on Stanbury's right foot from lying on top of her fourth toe. Dr. Bacardi assured Stanbury that recovery time following the surgery would be short and her work schedule would not be interrupted.

Stanbury signed two consent forms prior to the December 11, 1991 surgery. One document on Dr. Bacardi's stationery entitled "Surgery Informer" contained a brief discussion of the general risks and complications of surgery, but did not identify the type of surgery Dr. Bacardi planned to perform. The second document was a Centennial Medical Center form entitled "Consent for Operation, Administration of Anesthesia and Other Procedures." In the space provided for describing the operation to be performed, someone hand wrote: "Bilateral Osteotomy, Bilateral Repair Tailor Bunion, Bilateral Arthroplasty, Bilateral Realignment Digit 4 and 5, Bilateral Removal 5th Toenail." Stanbury asserts that she was not informed about the nature of these procedures and that she did not know that she had consented to surgical procedures on both her feet. Stanbury said that she did not knowingly consent to anything other than the minor procedure Dr. Bacardi had described in his office on November 22.

On December 11, 1991, Dr. Bacardi performed extensive surgery on both of Stanbury's feet while she was under a general anesthetic. During the mid-afternoon, Stanbury was released from the hospital, and exited in a wheelchair with both feet heavily bandaged. Although she could remember very little about the afternoon

following surgery, Stanbury said that over the following days she realized that surgery had been performed on both her feet, and she described her feet as "[t]wo big white blobs." When Dr. Bacardi removed the surgical dressing during her first office visit on December 20, 1991, nine days after surgery, Stanbury said she was in "complete and utter shock" and that she "couldn't believe all that had been done. There were so many stitches and so many things, it was just unbelievable." Stanbury also noticed that the fifth toe of her right foot was not touching the floor but rather was pointing straight up in the air. Stanbury said she did not specifically ask Dr. Bacardi why he had performed surgery on her left foot; however, she asked him generally what he had done to her feet. According to Stanbury, Dr. Bacardi was very vague and told her the surgery was necessary to correct hereditary problems.

Stanbury had four more office visits with Dr. Bacardi between January 10 and March 17, 1992. On April 3, 1992, Dr. Bacardi performed additional surgery to correct the misalignment of the fifth toe on Stanbury's right foot. During a post-operative visit on May 5, 1992, Dr. Bacardi told Stanbury that there was nothing more he could do for her and that it would take approximately one year for her feet to fully heal.

Theresa Stanbury[2] filed a malpractice action against Dr. Bacardi and Hospital Corporation of America[3] on April 30, 1993. She alleged that Dr. Bacardi had been negligent in advising her to have surgery, in performing the surgery, and in providing

---

[2]John Stanbury claimed loss of consortium.

[3]On June 9, 1993, the plaintiffs voluntarily dismissed all claims against Hospital Corporation of America, d/b/a Centennial Hospital, and it is not a party to this appeal.

-4-

her post-operative care. Stanbury also alleged that Dr. Bacardi had performed unnecessary surgery, that he had failed to obtain her consent to the surgery performed on December 11, 1991, that he had ignored her complaints of pain and infection, and that he had falsified office notes to conceal her actual condition. Dr. Bacardi responded, denying all wrongdoing and asserting that the claims were barred by the statute of limitations.

At the close of the plaintiffs' proof in the jury trial, the trial court directed a verdict in favor of Dr. Bacardi on the theories of negligent post-operative care, ignoring Stanbury's complaints of pain and infection, and intentionally falsifying office notes to conceal her true condition. The defendant moved for a directed verdict on the basis that all claims were barred by the one year statute of limitations of the Tennessee Medical Malpractice Act,[4] but the trial court denied that motion finding that Dr. Bacardi had provided continuing care to Stanbury through the final office visit on May 5, 1992, which was within one year of the date she filed suit. The trial court submitted to the jury the plaintiff's claims concerning lack of informed consent, advising and performing unnecessary surgery, and negligently performing the surgeries. In response to a question which arose during jury deliberations, however, the trial court withdrew the claim for negligently performing the surgeries. The jury returned a general verdict in favor of the plaintiffs awarding Theresa Stanbury $211,000 and John Stanbury $10,000.

---

[4]Tenn. Code Ann. § 29-26-116(1980).

The defendant appealed, and the Court of Appeals reversed the judgment in favor of the plaintiffs and dismissed the complaint, finding that the claims were barred by the one year statute of limitations. The intermediate court found the continuing medical treatment doctrine inapplicable under the facts of this case, and, in addition, observed that its applicability has been eroded or eliminated in this State by judicial and legislative adoption of the discovery rule. Judge Koch, in a separate opinion, agreed with the majority that the informed consent claims were barred by the statute of limitations. Finding that the continuing medical treatment doctrine has been completely subsumed into the discovery rule, Judge Koch urged that its abolition be expressly recognized. However, he dissented from dismissal of the entire case. Since Stanbury's unnecessary surgery claim was filed within one year of the time she was informed by another health care professional that the initial surgery was unnecessary, Judge Koch opined that it had been timely filed within one year of its discovery.

Thereafter, we granted the plaintiffs permission to appeal to determine whether the common law "continuing medical treatment doctrine" remains viable in Tennessee. For the reasons that follow, we conclude that the common law doctrine has been subsumed by the discovery rule and therefore affirm the judgment of the Court of Appeals dismissing the complaint.

## CONTINUING MEDICAL TREATMENT DOCTRINE

Until December 1974,[5] negligence actions against health care providers, like all other actions for injuries to the person in Tennessee, were required to be filed within one year after the date of the wrongful act that caused the plaintiff's injury. Albert v. Sherman, 167 Tenn. 133, 135, 67 S.W.2d 140, 141 (1934); Bodne v. Austin, 156 Tenn. 353, 364-65, 2 S.W.2d 100, 103 (1928); Tenn. Code Ann. § 28-304. The two most common exceptions to this rule involved continuing torts and fraudulent concealment of the injury.[6]

In 1938, the intermediate appellate court adopted the continuing tort principle in a case involving an employee who had become disabled by breathing chemical particles in his employer's plant over an extended period of time. Noting that the employer had a duty to protect its employees from breathing these particles, the court held that the employer had committed "one continuous tort, beginning with the employment and ending only at the time of total disability of the employee and the termination of his employment." Tennessee Eastman Corp. v. Newman, 22 Tenn.

---

[5]Teeters v. Currey, 518 S.W.2d 512, 517 (Tenn. 1974); Tenn. Code Ann. §29-26-116(a)(2)(1980).

[6]As Judge Koch recognized, the facts of this case do not support the plaintiff's claim of fraudulent concealment. To establish fraudulent concealment a plaintiff must prove (1) that the defendant took affirmative action to conceal the cause of action or remained silent and failed to disclose essential facts despite a duty to do so **and** (2) the plaintiff could not have discovered the cause of action despite exercising reasonable diligence. Benton v. Snyder, 825 S.W.2d 409, 414 (Tenn. 1992). Because Dr. Bacardi affirmatively and repeatedly advised the plaintiff to wait a year (the precise statutory time period within which she had to file a malpractice action) for her feet to completely heal, the proof in this record supports the first prong of the fraudulent concealment exception. However, the defense does not apply because, as we hold, the plaintiff could have discovered the injury through the exercise of reasonable diligence. Compare Hall v. De Saussure, 297 S.W.2d 81 (Tenn. App. 1956) (A physician performed surgery upon the spine of the plaintiff which had not been authorized. The physician did not inform the plaintiff about the unauthorized procedure. The plaintiff did not discover the injury until after the expiration of the one year statute of limitations when another physician made an x-ray and informed the plaintiff of the true character of the surgery. The plaintiff brought suit and the defendant alleged that the suit was barred by the statute of limitations. Finding that the physician had a duty to disclose the nature of the surgery because of the confidential physician-patient relationship and concluding that the plaintiff could not have discovered the cause of action by reasonable diligence, the intermediate court applied the fraudulent concealment exception and held that the suit had been timely filed.)

App. 270, 279, 121 S.W.2d 130, 135 (1938).  Accordingly, the employee's action filed within one year of the onset of his disability and the termination of his employment was held to be timely filed.  Id.; see also Steiner v. Spencer, 24 Tenn.App. 389, 145 S.W.2d 547 (1940).

Several years later, the intermediate appellate court extended the continuing tort principle to medical malpractice actions.  In Frazor v. Osborne, 57 Tenn.App. 10, 414 S.W.2d 118 (1966), the plaintiff brought a medical malpractice action against her physician and the hospital in which she had undergone surgery over ten years earlier.  During the operation, in 1952, a surgical sponge was placed in her body and negligently left there upon the operation's completion.  Over the next ten years, the plaintiff was under the defendant doctor's care and throughout that time, the incision from plaintiff's operation remained open and infected, and as a result, she suffered severe pain and was eventually totally disabled.  On May 2, 1961, some members of the plaintiff's family noticed that threads were beginning to work out of the incision.  When Frazor's family was unable to locate Dr. Osborne, one of his associates made a house call, probed the incision, and removed portions of the embedded sponge.  The remainder of the embedded sponge was removed shortly thereafter, and within a few days, the incision completely healed and never caused the plaintiff further problems.

The plaintiff brought suit in 1962, within one year of the date the sponge was discovered and removed.  The trial court directed a verdict for the defendant doctor and hospital finding the action barred by the one year statute of limitations.  The Court of Appeals affirmed the trial court's judgment as to the hospital, but reversed

as to the doctor, finding that the plaintiff's cause of action did not accrue until the physician/patient relationship terminated. Accordingly, in the context of medical malpractice cases, the continuing tort principle became known as the continuing medical treatment doctrine.

Six years after Frazor was decided, this Court, in Teeters v. Currey, 518 S.W.2d 512 (Tenn. 1974), adopted the discovery rule for determining when the statute of limitations begins to run in medical malpractice actions. In that case, the continuing treatment doctrine was unavailable because the doctor-patient relationship had terminated approximately three years before the suit was filed. Teeters, following the birth of a normal child, developed medical complications which led Dr. Currey, her attending physician, to recommend a tubal ligation to prevent future pregnancies. Teeters followed his advice and Dr. Currey performed the procedure on June 6, 1970. On December 6, 1972, Teeters was informed that she was pregnant, and on March 9, 1973, Teeters gave birth to a premature child with severe complications. Following a second bilateral tubal ligation, Teeters brought suit against Dr. Currey on November 15, 1973, almost three and one-half years after the initial surgery, but only eleven months after discovering her pregnancy.

In concluding that the plaintiff's claim was timely filed, this Court held that "the cause of action accrues and the statute of limitations commences to run when the patient discovers, or in the exercise of reasonable care and diligence for his own health and welfare, should have discovered the resulting injury." Teeters, 518 S.W.2d at 515. In choosing to adopt the discovery rule, this Court refused to embrace a rule of law which would require a plaintiff to sue to vindicate a non-existing

wrong at a time when the injury is "unknown and unknowable." Id. This Court did not address the relationship between the newly adopted discovery rule and the continuing medical treatment doctrine.

Approximately six months later, the General Assembly included the discovery rule as part of the Medical Malpractice Claims Act of 1975. Now codified at Tenn. Code Ann. § 29-26-116, the legislative statute of limitations provides, in pertinent part, as follows:

> (a)(1) The statute of limitations in malpractice actions shall be one (1) year as set forth in § 28-3-104.
> (2) In the event the alleged injury is not discovered within the said one (1) year period, the period of limitation shall be one (1) year from the date of such discovery.
> (3) In no event shall any such action be brought more than three (3) years after the date on which the negligent act or omission occurred except where there is fraudulent concealment on the part of the defendant in which case the action shall be commenced within one (1) year after discovery that the cause of action exists.
> (4) The time limitation herein set forth shall not apply in cases where a foreign object has been negligently left in a patient's body in which case the action shall be commenced within one (1) year after the alleged injury or wrongful act is discovered or should have been discovered.

Tenn. Code Ann. § 29-26-116 (1980). The statute of limitations has several key elements. Section 1 grants an injured party one year within which to bring suit after the cause of action has accrued. If an injury is not discovered within the one year time period, Section 2 allows the injured party one year within which to bring suit from the date of discovery, but Section 3 (a statute of repose) imposes a three-year ceiling upon that right. If there is fraudulent concealment on the part of the physician or if a foreign object has been negligently left in a patient's body by the physician, as was the case in Frazor, supra, the injured party is entitled to commence a lawsuit within one year after discovery of the fraudulent concealment or foreign object. Hoffman v. Hospital Affiliates, Inc, 652 S.W.2d 341 (Tenn. 1983).

Neither this Court in <u>Teeters</u>, nor the General Assembly in the statute, explicitly addressed the viability of the continuing medical treatment doctrine. Therefore, the dispositive inquiry in this appeal is whether the common law continuing medical treatment doctrine has been abrogated by judicial and legislative adoption of the discovery rule in this State. We join the intermediate appellate court and conclude that the doctrine has been abrogated.[7]

The common law doctrine has been described as follows:

[I]f the facts show continuing medical or surgical treatment for a particular illness or condition in the course of which there is malpractice producing or aggravating harm, the cause of action of the patient accrues at the end of the treatment for that particular illness, injury or condition, unless the patient sooner knew or reasonably should have known of the injury or harm. . . ."

<u>Hecht v. Resolution Trust Corp.</u>, 635 A.2d 394, 401 (Md. 1994); <u>Robinson v. Mount Sinai Medical Center</u>, 402 N.W.2d 711, 716 (Wis. 1987). The rationale underlying the rule is that a patient must trust a physician to remain in his care and during that care, the patient is not likely to suspect negligent treatment. "It is the trust relationship that may make discovery of a claim difficult." <u>Wheeler v. Schmid Laboratories, Inc.</u>, 451 N.W.2d 133, 138 (N.D. 1990).

Considering the formulation of the doctrine, and the rationale upon which it is based, it is clear that the continuing medical treatment doctrine is merely a particularized application of the discovery rule. The rule presumes, for policy reasons, that a patient has not discovered an injury during the time medical treatment continues. If there is actual proof that the patient <u>knows or reasonably should know</u>

---

[7]<u>See</u> <u>also</u> <u>Housh v. Morris</u>, 818 S.W.2d 39, 43-44 (Tenn. App. 1991).

<u>of the injury or harm before termination of medical treatment</u>, the statute of limitations is not tolled.  The rule has outlived its necessity in light of the comprehensive medical malpractice statute of limitations which requires that suit be brought within one year of the negligent act or within one year of discovery.  The statute contains explicit exceptions for fraudulent concealment and foreign objects which more often result in lengthy delays.  Although the common law doctrine still is recognized in some jurisdictions,[8] it has been judicially or legislatively abrogated in many states following adoption of the discovery rule.  <u>See</u> <u>e.g.</u> <u>Jones v. McDonald</u>, 631 So.2d 869, 873 (Ala. 1993);  <u>Ewing v. Beck</u>, 520 A.2d 653 (Del. 1987); <u>Cunningham v. Huffman</u>, 609 N.E.2d 321 (Ill. 1993); <u>Hecht v. First National Bank & Trust Co.</u>, 490 P.2d 649 (Kan 1971); <u>Hill v. Fitzgerald</u>, 501 A.2d 27 (Md. 1985); <u>Crumpton v. Humana, Inc.</u>, 661 P.2d 54 (N.M. 1983); <u>Russo v. Diethrick</u>, 617 P.2d 30, 35 (Ariz. Ct. App. 1980).  The time for its express abolition has arrived in Tennessee as well.

Having decided that the continuing medical treatment doctrine has been abrogated by adoption of the discovery rule, we must next determine whether the Court of Appeals erred in concluding that the plaintiff's claims are time-barred.  Without question, the plaintiff's lawsuit was not filed within one year of the alleged negligent act, the surgery on December 11, 1991.  We must therefore determine whether suit was filed within one year of discovery of an injury.

---

[8]Comment, <u>When Your Doctor Says, "You Have Nothing to Worry About" Don't Be So Sure:</u> <u>The Effect of Fabio v. Bellomo on Medical Malpractice Actions in Minnesota</u>, 78 Minn. L. Rev. 943, n.53 (April, 1994).  Several of the jurisdictions which continue to apply the doctrine have not adopted the discovery rule. <u>See</u> e.g. <u>Healy v. Langdon</u>, 511 S.W.2d 498 (Neb. 1994); <u>Aubin v. Burke</u>, 434 N.W.2d 282 (Minn. Ct. App. 1989).

We begin our analysis of this issue with the principle that the statute of limitations commences to run when the patient knows or in the exercise of reasonable care and diligence should know, that an injury has been sustained. Teeters, 518 S.W.2d at 515; see also Wyatt v. A-Best, Co., Inc., 910 S.W.2d 851, 854 (Tenn. 1995). In other words, the statute of limitations in a medical malpractice case is tolled until the plaintiff "discovered, or reasonably should have discovered, (1) the occasion, the manner, and the means by which a breach of duty occurred that produced his injuries; and (2) the identity of the defendant who breached the duty." Foster v. Harris, 633 S.W.2d 304 (Tenn. 1982). However, it is not necessary that the plaintiff

> actually know that the injury constitutes a breach of the appropriate legal standard in order to discover that he has a 'right of action;' the plaintiff is deemed to have discovered the right of action if he is aware of facts sufficient to put a reasonable person on notice that he has suffered an injury as a result of wrongful conduct.

Roe v. Jefferson, 875 S.W.2d 653, 657 (Tenn. 1994); see also Carvell v. Bottoms, 900 S.W.2d 23, 29 (Tenn. 1995).

Applying that standard to the facts in this case, it is clear that the plaintiff's medical malpractice lawsuit is time-barred. Dr. Bacardi performed surgery on Theresa Stanbury's feet on December 11, 1991. A few days after surgery, Stanbury realized that both feet were bandaged and she described them as "[t]wo big white blobs." Stanbury maintains that she knowingly consented to surgery on her right foot only. According to Stanbury, she had no medical problems with her left foot prior to the surgery performed by Dr. Bacardi. When she questioned Dr. Bacardi about the reason for the surgery, Stanbury said she received a very vague response. Based on the record, it appears that shortly after the surgery, Stanbury was aware of facts

sufficient to put a reasonable person on notice that she had suffered an injury as a result of wrongful conduct. Not only was she aware of the occasion, manner, and means by which the breach of duty producing her injuries occurred, she also knew the identity of the person who breached the duty.

Even assuming that her claim for lack of informed consent is barred by the statute of limitations, the plaintiff maintains that she had not discovered her claim of unnecessary surgery until she was informed by another health care professional that Dr. Bacardi deviated from the standard of care for podiatrists by failing to follow a conservative treatment regime before recommending surgery. Since she filed suit within one year of receiving that information, Stanbury argues that her claim was timely filed. We disagree.

We emphasize that under the discovery rule, the statute begins to run when the plaintiff knows or in the exercise of reasonable care and diligence should know, that an injury has been sustained. It is knowledge of facts sufficient to put a plaintiff on notice that <u>an</u> injury has been sustained which is crucial. Again, a plaintiff need not "actually know that the injury constitutes a breach of the appropriate legal standard in order to discover that he has a 'right of action.'" <u>Roe</u>, 875 S.W.2d at 657; <u>see</u> <u>also</u> <u>Carvell v. Bottoms</u>, 900 S.W.2d at 29. In other words, a plaintiff need not actually know the specific type of legal claim he or she has so long as the plaintiff is "aware of facts sufficient to put a reasonable person on notice that he has suffered an injury as a result of wrongful conduct." <u>Id</u>. In this case, the plaintiff was aware of facts sufficient to put a reasonable person on notice that she had suffered an injury as a result of the surgery. Advice from another health care professional that a claim

-14-

exists is not a prerequisite to accrual of a medical malpractice cause of action. In fact, we have specifically rejected such a requirement in the context of medical and legal malpractice actions. Roe, 857 S.W.2d at 658; Carvell, 900 S.W.2d at 29. Even assuming Tennessee applied such a rule, which it does not, in this case the plaintiff's assertion that she was unaware of her claim for unnecessary surgery until advised by another health care professional is unpersuasive because she was not so advised until after she filed the complaint in this case alleging unnecessary surgery. Stanbury knew or reasonably should have known that she had a right of action against the defendant, at the latest, by the time of the February, 1992 office visit, when she realized that the fifth toe on her foot was not in a normal position. However, more than fourteen months had passed before suit was filed on April 30, 1993. Accordingly, the plaintiff's lawsuit is time-barred.

## CONCLUSION

Because we conclude that the continuing medical treatment doctrine was abrogated by adoption of the discovery rule, and the plaintiff's action was not instituted within one year of discovery, the lawsuit is time-barred by the statute of limitations. Accordingly, we affirm the judgment of the Court of Appeals dismissing the complaint.

_____
FRANK F. DROWOTA III
JUSTICE

**Concur:**
Anderson, C. J.
Reid, Birch, Holder, JJ.