Tracy M. LUNA, Individually and as the Surviving Spouse of James D Luna, the Decedent

v.

ST. THOMAS HOSPITAL.

Court of Appeals of Tennessee, at Nashville.

June 26, 2007 Session.

Dec. 4, 2007.

Application for Permission to Appeal Denied by Supreme Court May 5, 2008.

Joseph Bednarz, Sr. and Joseph Bednarz, Jr., Nashville, Tennessee, for the appellant, Tracy M. Luna.

Robert Shepherd Patterson, Nashville, Tennessee, for the appellee, St. Thomas Hospital.

## OPINION

DAVID R. FARMER, J., delivered the opinion of the court, in which ALAN E. HIGHERS, P.J., W.S., and WALTER C. KURTZ, SP. J., joined.

In this medical malpractice action, the trial court awarded summary judgment to defendant hospital on the basis of the statute of limitations. It later denied plaintiff's motion to alter or amend the judgment. Finding that the plaintiff established the existence of a disputed material fact regarding when she should have discovered her cause of action against the hospital, we reverse and remand the mat-

ter for further proceedings consistent with this opinion.

Tracy M. Luna (Mrs. Luna) brought this medical malpractice action against St. Thomas Hospital (the hospital) on December 5, 2005, approximately two years after the death of her husband, James D. Luna (Mr. Luna), and approximately one year after filing suit against her husband's two doctors. Mr. Luna entered the hospital on November 17, 2003, with a bleeding duodenal ulcer and remained there until his death on December 4, 2003. Mrs. Luna alleges that the negligence of the hospital's residents unreasonably delayed treatment and caused her husband's death. The dispute on appeal involves the application of the discovery rule to the instant facts and whether it tolled the running of the statute to allow Mrs. Luna to prosecute this second malpractice suit.

Following the death of her husband, Mrs. Luna requested copies of his medical records from the hospital in December of 2003. The records revealed that Mr. Luna was admitted to St. Thomas Hospital on November 17, 2003, because he was experiencing stomach pain and was vomiting blood. The next day, Dr. Ronald E. Pruitt (Dr. Pruitt), a gastroenterologist, performed an exploratory procedure and discovered a bleeding ulcer; he then cauterized the ulcer and injected an agent to stop the bleeding. On the evening of November 19, 2003, Mr. Luna experienced a bloody bowel movement, indicative of re-bleeding, and passed out from a severe drop in blood pressure. Over the next several hours, Mr. Luna received several transfusions. In the early morning hours of November 20, 2003, Mr. Luna experienced another bloody bowel movement. The medical records indicated that a Doctor Luther contacted Dr. Pruitt's on-call partner at 6:00 a.m. and received permission to secure a surgical consult. The records

also reflected that one hour later, the "Red Med Team" examined Mr. Luna and noted that they were awaiting a decision on surgery. Elsewhere in the paperwork, Dr. Jonathan A. Cohen, M.D. (Dr. Cohen), a surgeon, noted in his records that Dr. Pruitt called him at 11:30 a.m. on November 20, 2003, and asked him to have the surgical residents check on Mr. Luna and to be available for surgical backup. Dr. Pruitt had communicated that Mr. Luna was "presently hemodynamically stable" following the cautery of the ulcer, and the surgical residents had later reported to Dr. Cohen that Mr. Luna had received seventeen units of blood but was not presently bleeding. Dr. Cohen reported that he met with Mr. Luna at 1:30 p.m. that afternoon and concluded that he should wait until Mr. Luna began to re-bleed before operating on him. At approximately four o'clock that afternoon, Mr. Luna began to hemorrhage severely, which ultimately led to his death.

Mrs. Luna filed the first malpractice suit against Doctors Pruitt and Cohen on December 3, 2004. Her attorney reviewed the records with the assistance of a physician who concluded that Dr. Cohen's November 20 decision to delay surgical intervention until Mr. Luna began to re-bleed was negligent.

Approximately three months after reviewing the doctors' depositions in the first lawsuit, Mrs. Luna filed suit against the hospital on December 5, 2005. The hospital filed a motion for summary judgment on February 14, 2006 and included with it a statement of undisputed material facts and Mrs. Luna's original complaint filed against Doctors Pruitt and Cohen. Mrs. Luna admitted each material fact submitted by the hospital, including the following:

1. James D. Luna died on December 4, 2003, two years and one day

before the Complaint in this matter was filed.

2. Mr. Luna died while a patient at St. Thomas Hospital.

3. On December 3, 2004, Tracy M. Luna, the Plaintiff in this matter, filed a "medical negligence/wrongful death action" against Ronald E. Pruitt, M.D., and Jonathan A. Cohen, M.D. (hereinafter referred to as the "2004 Lawsuit")....

....

7. In December 2003, Mrs. Luna and some of her husband's kin became concerned about why Mr. Luna had died in the hospital under the constant care of physicians and hospital staff personnel....

8. In December 2003, Mrs. Luna wanted to know if any of Mr. Luna's healthcare providers were negligent in any way that caused or substantially contributed to his death....

9. As a result of her concerns that Mr. Luna's healthcare providers may have been negligent, later in December 2003, Mrs. Luna sought and received from St. Thomas Hospital what she presumed to be most of Mr. Luna's hospital records....

10. After reviewing Mr. Luna's hospital records from St. Thomas and before filing the 2004 Lawsuit on December 3, 2004, Mrs. Luna determined that she had a cause of action against Dr. Pruitt and Dr. Cohen for negligence in treating Mr. Luna at St. Thomas Hospital....

11. Mrs. Luna did not file the present medical malpractice action against St. Thomas until December 5, 2005, more than one year after she sued Mr. Luna's doctors, and more than two years after Mr. Luna died....

12. Paragraph 23 of the 2004 Lawsuit was directed at and intended to address the statute of limitations and "discovery rule" related to Mrs. Luna's claims arising out of Mr. Luna's death....

The hospital contended that Mrs. Luna's request and receipt of her husband's medical records established that she suspected someone at St. Thomas Hospital of negligence, thus causing the statute of limitations to run. Additionally, the hospital relied upon paragraph twenty-three (23) from Mrs. Luna's complaint filed in the first lawsuit against the two doctors:

> After Mr. Luna's death, Mrs. Luna ... became concerned about why Mr. Luna had died in the hospital under the constant care of physicians and hospital staff personnel. [She] wanted to know if any of Mr. Luna's healthcare providers were negligent in any way that caused or substantially contributed to his death.

Mrs. Luna filed a brief in opposition to the motion on March 31, 2006, and attached the sworn affidavit of her attorney and a selection of her husband's medical records. She contended that the statute of limitations did not begin to run until she discovered or reasonably should have discovered both the injury and the identity of the tortfeasor. She further asserted that she had no reason to suspect the residents until she reviewed the doctors' depositions in the latter part of 2005. Mrs. Luna submits that the depositions yielded information pointing to the residents' negligence. Specifically, she learned that nobody called for a surgical consult after Dr. Luther's conversation with Dr. Pruitt's on-call partner at 6:00 a.m. on November 20, 2003. Rather, Dr. Cohen was first contacted some five hours later. Mrs. Luna argues that the depositions, not the medical records, brought this and other facts to

light. She filed the second malpractice suit against their employer, St. Thomas Hospital, within three months after this discovery.

The trial court granted the hospital's motion for summary judgment by order entered on April 21, 2006. On May 22, 2006, Mrs. Luna filed a motion to alter or amend the judgment supported by the affidavit of Dr. James Curci (Dr. Curci), a board certified surgeon. His affidavit stated that there was "nothing in the medical records alone to suggest that the residents deviated from the standard of acceptable professional practice and/or that the deviation caused Mr. Luna injuries that he otherwise would not have suffered." He also stated that the first suggestion of the residents' negligence appeared to him in October of 2005, when he reviewed Dr. Cohen's deposition. Although the trial court expressly considered the affidavit of Dr. Curci, it nevertheless denied Mrs. Luna's motion by order entered July 12, 2006. Mrs. Luna filed a notice of appeal on August 10, 2006.

### Issues Presented

Mrs. Luna presents the following issues, as slightly reworded, for our review on appeal:

(1) Whether the trial court erroneously applied the discovery rule and thus erred in granting summary judgment; and

(2) Whether the trial court erred in denying Plaintiff's motion to alter or amend the judgment.

### Standard of Review

We review an award of summary judgment *de novo*, with no presumption of correctness. *Guy v. Mut. of Omaha Ins. Co.*, 79 S.W.3d 528, 534 (Tenn.2002). Summary judgment is appropriate only when the moving party can demonstrate that there are no disputed issues of material fact and that it is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *Byrd v. Hall*, 847 S.W.2d 208, 214 (Tenn. 1993). The party moving for summary judgment must affirmatively negate an essential element of the nonmoving party's claim, or conclusively establish an affirmative defense. *McCarley v. West Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998).

When a party makes a properly supported motion for summary judgment, the burden shifts to the nonmoving party to establish the existence of disputed material facts. *Id.* A mere assertion that the nonmoving party has no evidence does not suffice to entitle the moving party to summary judgment. *Id.* In determining whether to award summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Staples v. CBL & Assocs.*, 15 S.W.3d 83, 89 (Tenn.2000). The court should award summary judgment only when a reasonable person could reach only one conclusion based on the facts and the inferences drawn from those facts. *Id.* Summary judgment is not appropriate if there is any doubt about whether a genuine issue of material fact exists. *McCarley*, 960 S.W.2d at 588.

When a party files a motion to alter or amend a judgment and submits additional information in support of it, the trial court should consider the following factors:

[T]he moving party's effort to obtain the evidence in responding to the summary judgment; the importance of the new evidence to the moving party's case; the moving party's explanation for failing to offer the evidence in responding to the summary judgment; the unfair prejudice to the nonmoving party; and any other relevant consideration.

*Stovall v. Clarke,* 113 S.W.3d 715, 721 (Tenn.2003). We review a trial court's ruling on a motion to alter or amend under an abuse of discretion standard. *Id.*

### Analysis

■ The pivotal issue in this appeal involves the application of the discovery rule to Mrs. Luna's action. The Tennessee Code provides for the application of the discovery rule to medical malpractice actions as follows:

(a)(1) The statute of limitations in malpractice actions shall be one (1) year as set forth in § 28–3–104.

(2) In the event the alleged injury is not discovered within such one (1) year period, the period of limitation shall be one (1) year from the date of such discovery.

Tenn.Code Ann. § 29–26–116(a)(1)(2)(2000).

■ Prior to the adoption of the discovery rule by the legislature, medical malpractice actions were subject to the same one-year statute of limitations applicable to other negligence actions. *Stanbury v. Bacardi,* 953 S.W.2d 671, 674 (Tenn.1997). This provision required that the claim be filed within one year of the date of the negligent act causing injury. *Id.* Under the discovery rule, however, the commencement of the running of the statute of limitations depends upon when the plaintiff has sufficient knowledge that he or she has sustained an injury as a result of another's wrongful conduct. *Id.* at 678. "[T]he statute of limitations in a medical malpractice case is tolled until the plaintiff 'discovered, or reasonably should have discovered, (1) the occasion, the manner, and the means by which a breach of duty occurred that produced [the] injuries; and (2) the identity of the defendant who breached the duty.'" *Id.* at 677 (quoting

*Foster v. Harris,* 633 S.W.2d 304 (Tenn. 1982)).

■ The determination of when a reasonable person should know that his injury was caused by some wrongful or negligent act is generally a question for the trier of fact. *See, e.g., McClellan v. Stanley,* 978 S.W.2d 943, 945 (Tenn.Ct.App.1998). In reviewing the trial court's award of summary judgment to St. Thomas Hospital on the basis of the statute of limitations, we must consider whether Mrs. Luna established the existence of a disputed material fact. If she succeeded in doing so, then the trial court should have denied the hospital's motion. Because the evidence supports more than one reasonable conclusion, we conclude that the issue of Mrs. Luna's constructive knowledge of her cause of action presents a question of disputed, material fact.

In this instance, Mrs. Luna's access to names of all the healthcare providers was not tantamount to knowledge of the tortfeasor's identity. Although Mrs. Luna may have suspected that negligence had occurred during her husband's hospital stay, the circumstances presented more than one potential defendant. *But cf. Murphy v. Lakeside Med. Ctr.,* No. E2006–01721–COA–R3–CV, 2007 WL 906760, at *5–*6 (Tenn.Ct.App. Mar.26, 2007)(*no perm. app. filed*) (affirming dismissal of medical malpractice suit for severe hearing loss where there was only *one* clinic that had performed plaintiff's annual hearing tests for some twenty years and where the diagnosing physician told plaintiff, more than a year prior to filing of suit, that an earlier diagnosis of hearing loss would have allowed him to stop its progression); *McCullough v. Johnson City Emergency Physicians, P.C.,* 106 S.W.3d 36, 44 (Tenn.Ct.App.2002) (affirming dismissal on statute of limitations grounds and holding that belated dis-

covery of prescribing physician's name was immaterial where plaintiff knew the prescription for the alleged injury-producing medication had originated from *one* cardiology clinic).

When a plaintiff suspects wrongful conduct that could have originated from any of several potential defendants, the constructive knowledge analysis becomes more complex. For example, in *Fluri v. Fort Sanders Regional Medical Center,* this Court reviewed the trial court's grant of summary judgment to defendant doctors on a statute of limitations basis. *Fluri v. Fort Sanders Reg'l Med. Ctr.,* No. E2005–00431–COA–R3–CV, 2005 WL 3038627 (Tenn.Ct.App. Nov.14, 2005) *(no perm. app. filed).* In that case, the plaintiff sustained two severe fractures of her left femur following knee replacement surgery. *Id.* at * 1. A radiologist had reviewed post-operative x-ray films of the plaintiff's knee and reported that the x-ray revealed no abnormalities. *Id.* at *1 n. 1. Shortly thereafter, the plaintiff began physical therapy, during which the first fracture occurred. *Id.* at * 1. The first fracture, occurring only ten days after her knee replacement, required corrective surgery, but the plaintiff fractured her femur yet again. The second fracture was apparently brought on in part because of the surgery performed to repair the first fracture.

The plaintiff in *Fluri* filed suit against the physical therapy clinic and a rehabilitation nurse who allegedly caused the fracture. *Id.* From supplemental responses to interrogatories and a discovery deposition, the plaintiff later learned that the post-operative x-ray films revealed a hairline fracture that the radiologist had missed. *Id.* at * 1–*2. Well over a year after sustaining these fractures, the plaintiff amended her complaint, with leave of court, and added the radiology clinic and the radiologist as named defendants. *Id.* at *2. The defendants moved for summary judgment on the basis that the post-operative x-rays were available to the plaintiff at all times and that, given the temporal proximity of the knee replacement surgery to the fractures, the plaintiff was on constructive notice that a problem could have occurred during surgery. *Id.* at *3. This fact, contended the defendants, created a duty to investigate the circumstances surrounding both the surgery and the post-operative rehabilitation. *Id.* The plaintiff, on the other hand, asserted that she had no factual basis for suspecting a connection between the knee replacement surgery and the first fracture. *Id.* She argued that no reasonable person would suspect wrongful conduct on the part of the radiologist. *Id.* at *3–*4. She further concluded that only when she learned of the faintly visible fracture on the post-operative x-ray film did her cause of action against the radiologist accrue. *See id.*

Following a hearing on the matter, the trial court in *Fluri* ruled that the action was time-barred and granted summary judgment in favor of the radiologist and radiology clinic. We vacated the trial court's award of summary judgment and remanded the matter for a determination of whether a reasonable person in the plaintiff's circumstances would have investigated the possibility of the defendant doctors' alleged wrongful conduct. We held that the matter presented a disputed question of fact and was thus not suited for disposition on summary judgment because the facts and their reasonably drawn inferences supported more than one conclusion.

Although similar to these facts on several points, the instant facts are also distinguishable in pertinent ways. In *Fluri,* the issue involved the plaintiff's failure to link the wrongful conduct causing her injury to the knee replacement surgery, an event

separate from the rehabilitation activities that culminated in the severe fracture. Here, Mrs. Luna faced a known time period of continuous care during which the alleged wrongful conduct occurred; thus, the universe of potential tortfeasors was necessarily limited. On the other hand, the plaintiff in *Fluri* did not review the readily available x-ray films or otherwise investigate the possible negligence of the radiologist. Conversely, Mrs. Luna requested and reviewed all available medical records pertinent to the time period in question.

To establish that Mrs. Luna should have discovered the residents' alleged wrongful acts more than a year prior to filing her lawsuit, St. Thomas Hospital relies on paragraph twenty-three from her complaint against Doctors Pruitt and Cohen, which states as follows:

> After Mr. Luna's death, Mrs. Luna and some of her husband's kin became concerned about why Mr. Luna had died while in the hospital and under the constant care of physicians and hospital staff personnel. They wanted to know if any of Mr. Luna's healthcare providers were negligent in any way that caused or substantially contributed to his death. Accordingly, later in December 2003, Mrs. Luna sought and received from St. Thomas Hospital what is presumed to be most of Mr. Luna's hospital records. It was after those records were reviewed, and within one year prior to the filing of this Complaint, that Mrs. Luna discovered the facts, as alleged above, which she feels evidence causative negligence by Drs. Pruitt and Cohen, as alleged below.

Nothing in this paragraph indicates that Mrs. Luna possessed facts beyond the obvious one, that her husband died from complications associated with a bleeding ulcer while under the continuous care of hospital staff and physicians. St. Thomas Hospital would have this Court hold that Mrs. Luna had constructive notice of the hospital's potential negligence by virtue of the fact that the alleged tortious conduct occurred while her husband was a patient there. We decline to conclude as a matter of law that this information, without more, commenced the running of the statute of limitations.

The more appropriate question to consider is whether a reasonable person in Mrs. Luna's circumstances would have investigated the possibility of the residents' alleged wrongful conduct after reviewing her husband's medical records. Whether, more than a year before filing suit, a plaintiff had constructive knowledge of the injury, the wrongful conduct, and the tortfeasor's identity is generally a question for the trier of fact. See *McClellan*, 978 S.W.2d at 945. From the allegations in her first complaint against the two doctors, it appears that Mrs. Luna suspected the delay in surgical intervention to be the cause of her husband's death. Even though the medical records revealed the names of all treating physicians, only Doctors Pruitt and Cohen appeared to have a connection with the delay in performing the surgery. Dr. Pruitt contacted Dr. Cohen and reported that Mr. Luna was stable, and Dr. Cohen decided to delay the surgery pending a re-bleed.

Further, the affidavit submitted by Mrs. Luna in her motion to alter or amend the judgment places this factual issue even further into dispute. The hospital contends that Mrs. Luna could have—and should have—submitted this affidavit sooner, along with her brief in opposition to its motion for summary judgment. Although the motion to alter or amend the judgment fails to address the reason for the delayed submission of the affidavit, Mrs. Luna submitted a reply brief in support of her motion and included with it an affidavit

from the legal assistant of her former attorney, explaining the personal and medical problems he was encountering around the time the hospital sought a dismissal by summary judgment. The record is silent as to why the trial court decided to consider the expert's affidavit, only to then deny Mrs. Luna's motion.

As noted above, trial courts have broad discretion in deciding whether or not to consider additional information submitted in support of a motion to alter or amend a judgment. We review this type of decision under an abuse of discretion standard. The absence of information explaining the court's basis for considering the affidavit, coupled with our standard of review, leads us to concur in this decision. We cannot fairly conclude that the trial court erred in considering the expert's affidavit.

On the other hand, we find error in the trial court's conclusion after having considered the affidavit. If a board certified general surgeon detected nothing in the medical records themselves to suggest wrongful conduct on the part of the resi-

dents, we find it difficult to expect Mrs. Luna to have done so. We hold that the affidavit placed into dispute the factual question of Mrs. Luna's constructive knowledge of her cause of action against the hospital. The trial court should have denied the hospital's motion for summary judgment and allowed the trier of fact to determine whether or not Mrs. Luna should have discovered her cause of action against the hospital more than a year before she filed suit against it.

For the foregoing reasons, we reverse the trial court's award of summary judgment and remand the matter for further proceedings consistent with this opinion. Costs of this appeal are taxed to St. Thomas Hospital, for which execution shall issue if necessary.