IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 6, 2020 Session

## CHRISTA LAMBERT KARR ET AL. V. SAINT THOMAS MIDTOWN HOSPITAL ET AL.

**Appeal from the Circuit Court for Davidson County**
**No. 19C1537      Hamilton V. Gayden Jr., Judge**



**No. M2020-00029-COA-R3-CV**

This appeal concerns the dismissal of a health care liability action against Saint Thomas Midtown Hospital, Saint Thomas Health, and Ascension Health. The trial court dismissed the complaint with prejudice on the ground the statute of limitation, through the application of the discovery rule, barred all of the claims. The plaintiffs appealed. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which ANDY D. BENNETT and W. NEAL MCBRAYER, JJ., joined.

Jimmy W. Bilbo, Cleveland, Tennessee, for the appellants, Christa Lambert Karr and Jack Karr.

James E. Looper, Danielle S. Blauvelt, and Nathaniel T. Gorman, Nashville, Tennessee, for the appellees, Saint Thomas Midtown Hospital, Saint Thomas Health, and Ascension Health.

## OPINION

The matters at issue arise from a surgery performed on July 6, 2016, on Christa L. Karr by David H. McCord, M.D. ("Dr. McCord") while allegedly an employee, agent, or under the control of Saint Thomas Midtown Hospital, Saint Thomas Health, and Ascension Health, (collectively, "the Hospital Defendants").

Mrs. Karr first presented to Dr. McCord in March 2016 for an evaluation of perceived chronic back pain. After a series of appointments, Mrs. Karr was diagnosed with spondylosis and spinal stenosis. On her fourth visit to Dr. McCord, he recommended surgical intervention. Dr. McCord performed the recommended surgery on July 6, 2016, at Saint Thomas Midtown Hospital; the surgery involved the insertion of screws for a T5-L1

lumbar fusion. Mrs. Karr's admission and discharge diagnoses were spondylosis, scoliosis, and central disk herniated pulposus. Following the surgery, Mrs. Karr attended post-operative appointments with Dr. McCord until October 31, 2017. On October 31, 2017, Mrs. Karr asserts that she discovered, for the first time, that Dr. McCord had malpositioned screws during the surgery. Mrs. Karr never returned to Dr. McCord.

Continuing to experience chronic back pain and related problems, Mrs. Karr sought care from other health care providers, ultimately being treated by Joseph Cheng, M.D., ("Dr. Cheng)." On May 14, 2018, Dr. Cheng surgically removed the hardware previously installed by Dr. McCord in July 2016 and surgically explored the prior T5-L1 lumbar fusion. Plaintiffs allege that May 14, 2018, was the first time that they learned the type of surgery Dr. McCord performed was unnecessary and failed to address the diagnoses Dr. McCord had given Mrs. Karr. Plaintiffs claim the July 2016 surgery was unnecessary to treat spondylosis, was unnecessary for the degree of scoliosis, and that Dr. McCord did not include decompression or otherwise attempt to address the diagnoses of spinal stenosis or central herniated disc pulposus. Additionally, Plaintiffs assert that on May 14, 2018, Dr. Cheng discovered for the first time that both the number and the extent of the malpositioned screws was greater than previously known; one of the malpositioned screws was in Mrs. Karr's spinal canal, and other screws were through her ribs and abutting the aorta. Plaintiffs maintain it was not until the May 14, 2018 surgery was performed that they discovered the malpositioning of the screws was a likely deviation from the Hospital Defendants' standard of care.

Plaintiffs filed two separate but related cases in the trial court. Although all claims arise from a surgical procedure performed by Dr. McCord on July 6, 2016, at Saint Thomas Midtown Hospital, Dr. McCord and his practice group were the only defendants in the first action. Pre-suit notice was sent to Dr. McCord and his practice group on October 30, 2018, and the Complaint was filed on February 27, 2019. As for the second action, Plaintiffs sent pre-suit notices to the Hospital Defendants on March 4, 2019, and the action was commenced with the filing of the Complaint against the three defendants on July 1, 2019. The timeliness of the filing of the second action against the Hospital Defendants is the singular issue in this appeal; the claims against Dr. McCord and his practice group that arise from the first action are not at issue in this appeal.

The claims asserted by Plaintiffs in this action pertain to the Hospital Defendants' alleged failure to assure that Dr. McCord did not perform unnecessary surgery. In pertinent part, Plaintiffs contend they did not discover that they had a cause of action against the Hospital Defendants until May 2018, but upon discovery of sufficient facts, they timely gave pre-suit notice to the Hospital Defendants and commenced the action in July 2019.

In support of their Rule 12.02(6) motion to dismiss, the Hospital Defendants asked the court to take judicial notice of Plaintiffs' first case, which is based on the same occurrence. The Hospital Defendants argued that the second suit, which was filed on February 27, 2019, with pre-suit notices to the Hospital Defendants being sent on March

4, 2019, was time-barred because the statute of limitations began to run on October 31, 2017, when Plaintiffs discovered Dr. McCord malpositioned screws during the July 2016 surgery.

In opposition to the Hospital Defendants' motion to dismiss, Plaintiffs asserted that while Mrs. Karr discovered on October 31, 2017, that Dr. McCord malpositioned screws during the July 2016 surgery, merely malpositioning screws may or may not be below the standard of care, which depends upon the degree of malpositioning, a fact Plaintiffs contend remained unknown until May 2018.

After considering both positions, the court dismissed the Complaint with prejudice, finding the statute of limitation, even applying the discovery rule, barred the allegations in the Complaint. The court held that the Complaint established knowledge of both the identity of the person who caused the injury and that Mrs. Karr had been injured as of October 31, 2017. Accordingly, the court deemed both elements of the discovery rule had been satisfied and held that since pre-suit notice had not been sent to the Hospital Defendants on or by October 31, 2018, when the Complaint was filed on July 1, 2019, it was filed outside the statute of limitation.

The court further explained:

> Plaintiffs are deemed to have discovered the right of action when they become aware of facts to put a reasonable person on notice that he or she has suffered an injury as a result of the defendant's wrongful conduct. [*Vandergriff v. ParkRidge E. Hosp.*, 482 S.W.3d 545, 556 (Tenn. Ct. App. 2015)]. A plaintiff may not delay filing their Complaint until they know the specific type of legal claim they have or all the facts that affect the merit of a claim. *Id*. "Neither actual knowledge of a breach of the relevant standard nor diagnosis of the injury by another medical professional is a prerequisite to the accrual of a health care liability cause of action." *Sherrill* [*v. Souder*], 325 S.W.3d [584,] 595 [(Tenn. 2010)].

> Applying the law to the Complaint at issue the Court finds that the Plaintiff alleges in paragraph 23 of her Complaint that on October 31, 2017, for the first time, Mrs. Karr discovered that Dr. McCord had malpositioned screws during the fusion surgery. In addition she states in paragraph 23 that she never returned to Dr. McCord. Further, paragraph 24 of the Complaint states that thereafter Karr experienced chronic spinal pain and other related problems and went to several other health care providers to try to obtain treatment for her physical problems that caused the hurt.

> The Court finds that as set forth in the Complaint, the Plaintiff knew on October 31, 2017 that she had been injured by wrongful conduct and knew it was Dr. McCord that caused the injury. As set forth in Tennessee case law

interpreting the discovery rule—the Plaintiff may not delay filing their Complaint until they know the specific type of legal claim or all the facts that affect the merit of a claim. The Court grants the motion to dismiss based upon the discovery rule. As the Court has dismissed all the claims pursuant to the discovery rule, the Court does not find it necessary to address any of the remaining arguments of the defendants or alternate grounds for dismissal. However, the Court will note that to the extent the Tennessee Consumer Protection Act Claims are separate from the Health Care Liability claims, that these claims are also dismissed pursuant to the one year statute of limitations pursuant to TCA 47-18-110.

Plaintiffs appeal.

## ISSUES

The dispositive issue in this appeal is when Plaintiffs discovered or reasonably should have discovered the occasion, manner, and means by which a breach of duty of care occurred that produced Mrs. Karr's injuries, and the identity of the defendants who allegedly breached the duty of care.

## STANDARD OF REVIEW

A trial court's decision to grant a Rule 12.02(6) motion to dismiss is a question of law that we review de novo with no presumption of correctness. *See Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011). "A Rule 12.02(6) motion challenges only the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence." *Id*. Generally, "[t]he resolution of a 12.02(6) motion to dismiss is determined by an examination of the pleadings alone." *Id*. When a trial court considers matters outside of the pleadings, a motion to dismiss is converted to a motion for summary judgment. *Woodruff by & through Cockrell v. Walker*, 542 S.W.3d 486, 493 (Tenn. Ct. App. 2017) (citing Tenn. R. Civ. P. 12.02(6); *Smith v. Hauck*, 469 S.W.3d 564, 567 (Tenn. Ct. App. 2015)).

However, a court "may consider 'items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case . . . without converting the motion into one for summary judgment.'" *Stephens v. Home Depot U.S.A., Inc.*, 529 S.W.3d 63, 74 (Tenn. Ct. App. 2016) (quoting *Haynes v. Bass*, No. W2015-01192-COA-R3-CV, 2016 WL 3351365, at *4 (Tenn. Ct. App. June 9, 2016)); *see* Tenn. R. Evid. 201 (setting forth the procedure for judicial notice and the type of information of which a trial court may take judicial notice). Likewise, consideration of an existing or prior complaint does not convert the motion into a motion for summary judgment. *See id*. at 73; *see also Counts v. Bryan*, 182 S.W.3d 288, 293 (Tenn. Ct. App. 2005) (authorizing taking judicial notice of the date that the prior lawsuit was filed without converting a motion to dismiss

into a motion to summary judgment). Further, a trial court's consideration of exhibits attached to a complaint or incorporated by reference in the body of the complaint does not convert the motion to dismiss into a motion for summary judgment. *See* Tenn. R. Civ. P. 10.03 (permitting exhibits to pleadings to be considered part of the pleading when referred to and/or attached to the pleading); *see also Ragsdale v. City of Memphis*, 70 S.W. 3d 56, 62 (Tenn. Ct. App. 2001) ("Exhibits attached to the complaint are part of the pleading for all purposes.").

## ANALYSIS

Medical malpractice actions are subject to a one-year statute of limitations, but "[i]n the event the alleged injury is not discovered within such one-year period, the period of limitation shall be one (1) year from the date of such discovery." Tenn. Code Ann. § 29-26-116(a)(2). Under this provision, "the statute of limitations commences to run when the patient 'discovers, or reasonably should have discovered, (1) the occasion, the manner, and the means by which a breach of duty occurred that produced [the patient's] injuries; and (2) the identity of the defendant who breached the duty.'" *Shadrick v. Coker*, 963 S.W.2d 726, 733 (Tenn. 1998) (quoting *Stanbury v. Bacardi*, 953 S.W.2d 671, 677 (Tenn. 1997)).

This "discovery rule"—which is central to determining the timeliness of this action—has been succinctly explained by the Tennessee Supreme Court as follows:

> The plaintiff may not . . . delay filing suit until all the injurious effects and consequences of the alleged wrong are actually known to the plaintiff. *Wyatt v. A-Best Company*, 910 S.W.2d 851, 855 (Tenn. 1995). Similarly, the statute of limitations is not tolled until the plaintiff actually knows the "specific type of legal claim he or she has," *Stanbury*, 953 S.W.2d at 678, or that "the injury constituted a breach of the appropriate legal standard," *Roe v. Jefferson*, 875 S.W.2d 653, 657 (Tenn. 1994). Rather, as we have recently emphasized, the statute of limitations begins to run when the plaintiff knows or in the exercise of reasonable care and diligence should know that an injury has been sustained as a result of wrongful or tortious conduct by the defendant. *Stanbury*, 953 S.W.2d at 677; *see also Roe*, 875 S.W.2d at 657 ("The plaintiff is deemed to have discovered the right of action if he is aware of facts sufficient to put a reasonable person on notice that he has suffered an injury as a result of wrongful conduct."). "It is knowledge of facts sufficient to put a plaintiff on notice that an injury has been sustained which is crucial." *Stanbury*, 953 S.W.2d at 678. Such knowledge includes not only an awareness of the injury, but also the tortious origin or wrongful nature of that injury. *Hathaway v. Middle Tennessee Anesthesiology, P.C.*, 724 S.W.2d 355, 359 (Tenn. Ct. App. 1986).

*Shadrick*, 963 S.W.2d at 733–34.

Thus, it is not necessary that Plaintiffs actually knew that the injury constituted a breach of the appropriate legal standard to "discover" that they had a right of action against the Hospital Defendants. *See Stanbury*, 953 S.W.2d at 677. The relevant inquiry is when Plaintiffs became aware of facts sufficient to put a reasonable person on notice that he or she has suffered an injury as a result of the Hospital Defendants' wrongful conduct. *Pero's Steak & Spaghetti House v. Lee*, 90 S.W.3d 614, 621 (Tenn. 2002) (citing *Shadrick*, 963 S.W.2d at 733; *Roe*, 875 S.W.2d at 657). "Inquiry notice charges a plaintiff with knowledge of those facts that a reasonable investigation would have disclosed. . . . [O]nce a plaintiff gains information sufficient to alert a reasonable person of the need to investigate the injury, the limitations period begins to run." *Redwing v. Catholic Bishop for Diocese of Memphis*, 363 S.W.3d 436, 459 (Tenn. 2012). As explained by the Tennessee Supreme Court:

> A claimant need not actually know of the commission of a wrongful action in order for the limitations period to begin, but need only be aware of facts sufficient to place a reasonable person on notice that the injury was the result of the wrongful conduct of another. If enough information exists for discovery of the wrongful act through reasonable care and diligence, then the cause of action accrues and the tolling of the limitations period ceases. Neither actual knowledge of a breach of the relevant legal standard nor diagnosis of the injury by another medical professional is a prerequisite to the accrual of a medical malpractice cause of action.

*Sherrill*, 325 S.W.3d at 595.

Plaintiffs concede that on October 31, 2017, Mrs. Karr was informed that Dr. McCord had malpositioned screws during the July 6, 2016 fusion surgery. However, Plaintiffs argue they did not and could not have discovered they had separate causes of action against the Hospital Defendants until May 14, 2018—when Dr. Cheng performed surgery and discovered the malpositioned screws in Mrs. Karr's spinal canal, through her ribs, and abutting her aorta.

The Hospital Defendants disagree. Citing to *Sherrill*, they insist that Plaintiffs knew or should have known sufficient facts to put a reasonable person on notice that Mrs. Karr potentially suffered an injury due to the Hospital Defendants' wrongful conduct as of October 31, 2017, when Plaintiffs learned that Dr. McCord malpositioned screws during the July 2016 surgery. Thus, they contend that the statute of limitations began to run for all claims or causes of action—regardless of the theory under which the claims could be brought—as of October 31, 2017. We agree.

On October 31, 2017, Plaintiffs became aware that Dr. McCord malpositioned screws during Mrs. Karr's July 2016 surgery. Following her October 2017 visit, Mrs. Karr never returned to Dr. McCord, despite chronic back pain. Plaintiffs sent pre-suit notice to

Dr. McCord and his practice group on October 30, 2018. However, Plaintiffs did not send a pre-suit notice to any of the Hospital Defendants until March 2019.

As the trial court correctly stated,

Plaintiff knew on October 31, 2017 that she had been injured by wrongful conduct and knew it was Dr. McCord that caused the injury. As set forth in Tennessee case law interpreting the discovery rule—the Plaintiff may not delay filing their Complaint until they know the specific type of legal claim or all the facts that affect the merit of a claim. The Court grants the motion to dismiss based upon the discovery rule. . . .

We find the Hospital Defendants' argument compelling, considering Plaintiffs knew Mrs. Karr had been injured and the identity of those whose wrongful conduct allegedly caused the injury as of October 31, 2017. There was enough information for Plaintiffs to discover the wrongful act through reasonable care and diligence. As explained in *Sherrill*, "[n]either actual knowledge of a breach of the relevant legal standard nor diagnosis of the injury by another medical professional is a prerequisite to the accrual of a medical malpractice cause of action." 325 S.W.3d at 595. Here, Plaintiffs learned of the malpositioned screws on October 31, 2017, and sent pre-suit notice to Dr. McCord and his practice group on October 30, 2018. Thus, Plaintiffs had knowledge of facts as of October 31, 2017, which were sufficient as a matter of law to put a reasonable person on notice that Mrs. Karr had suffered an injury as a result of the wrongful conduct of the Hospital Defendants. Plaintiffs' suit was not timely filed.

## IN CONCLUSION

Therefore, the trial court's order is affirmed, and this matter is remanded for further proceedings consistent with this opinion. Costs of appeal are assessed equally against the parties.

_____
FRANK G. CLEMENT JR., P.J., M.S.