# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
December 10, 2015 Session

## JUSTIN R. ROGERS v. BLOUNT MEMORIAL HOSPITAL, INC., ET AL.

**Appeal from the Circuit Court for Blount County**
**No. L-18539      David R. Duggan, Judge**

---

**No. E2015-00136-COA-R3-CV-FILED-FEBRUARY 29, 2016**

---

This appeal involves a health care liability action filed by the plaintiff against Blount Memorial Hospital, Inc. ("BMHI") and the doctor who treated the plaintiff at BMHI from September 8, 2012, to September 13, 2012. The plaintiff filed his complaint on December 13, 2013, alleging that the defendant doctor had misdiagnosed his illness, causing a delay in treatment and resultant permanent injuries. Both defendants filed motions to dismiss, which were converted into motions for summary judgment with the filing of additional affidavits. The trial court granted summary judgment in favor of BMHI based on, *inter alia*, the applicable statute of limitations and BMHI's immunity as a governmental entity. The court subsequently granted summary judgment to the defendant doctor based on the statute of limitations. The plaintiff timely appealed. Determining that a genuine issue of material fact exists regarding when the plaintiff was aware of facts sufficient to place him on notice that his injury was allegedly the result of the defendant doctor's wrongful conduct, we conclude that summary judgment was improperly granted to the defendant doctor. We affirm the trial court's grant of summary judgment in favor of BMHI.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part, Reversed in Part; Case Remanded

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which JOHN W. MCCLARTY, J., joined. D. MICHAEL SWINEY, C.J., filed a separate concurring opinion.

Sidney W. Gilreath, Cary L. Bauer, and Matthew B. Long, Knoxville, Tennessee, for the appellant, Justin R. Rogers.

Carl P. McDonald and Diane M. Hicks, Maryville, Tennessee, for the appellee, Blount Memorial Hospital, Inc.

David E. Waite, Knoxville, Tennessee, for the appellee, Mohammed A. Bhatti, M.D.

## OPINION

### I. Factual and Procedural Background

The plaintiff, Justin R. Rogers, filed the instant health care liability action on December 13, 2013, against BMHI and Dr. Mohammed Bhatti. In his complaint, Mr. Rogers alleged that he presented to the BMHI emergency room on September 8, 2012, with fever and progressive numbness that began in his extremities and spread throughout his body. Mr. Rogers further stated that Dr. Bhatti diagnosed him with Guillain-Barré Syndrome ("GBS") and began administering plasmapheresis treatments. According to Mr. Rogers, it was later discovered that the actual cause of his symptoms was a spinal abscess and that he never had GBS. Mr. Rogers asserts that the delay in diagnosis of his spinal abscess resulted in permanent and irreparable spinal cord damage. Mr. Rogers contends that he did not become aware of facts leading him to discover the misdiagnosis until mid-October 2012.

Mr. Rogers subsequently sent pre-suit notice to BMHI on August 20, 2013, and to Dr. Bhatti on October 7, 2013. Following the filing of the complaint on December 13, 2013, both defendants filed motions to dismiss. Due to the subsequent filing of affidavits by Mr. Rogers and BMHI, the trial court treated these motions as motions for summary judgment. The court granted summary judgment to BMHI on March 24, 2014, for the following reasons: (1) expiration of the statute of limitations, (2) failure to allege in the complaint that BMHI was a governmental entity and that Dr. Bhatti was an employee working within the scope of his employment, and (3) unrefuted evidence that Dr. Bhatti was not an employee of BMHI.

The trial court continued the hearing on the summary judgment motion with respect to Dr. Bhatti to allow Mr. Rogers additional time to conduct discovery. The trial court ultimately granted summary judgment in favor of Dr. Bhatti on January 9, 2015, based upon expiration of the statute of limitations. The court found that as of September 13, 2012, or at the latest by October 5, 2012, based on the proof presented, Mr. Rogers was aware of facts sufficient to place a reasonable person on inquiry notice that he had suffered an injury as a result of Dr. Bhatti's alleged misdiagnosis. The court therefore concluded that the statute of limitations expired on October 5, 2013, and that the complaint filed on December 13, 2013, was time-barred. Mr. Rogers has appealed.

2

## II. Issues Presented

Mr. Rogers has presented the following issues for our review, which we have restated slightly:

1. Whether the trial court erred by granting summary judgment to Dr. Bhatti when a genuine issue of material fact exists regarding whether Mr. Rogers should have known prior to October 7, 2012, that he had a cause of action against Dr. Bhatti.

2. Whether the trial court erred by granting summary judgment when Mr. Rogers was of unsound mind until October 7, 2012.

3. Whether the trial court erred by failing to extend the statute of limitations by 120 days for Mr. Rogers's claim against BMHI.

4. Whether the trial court erred by granting summary judgment in favor of BMHI without allowing Mr. Rogers additional time for discovery.

5. Whether the trial court erred by granting summary judgment in favor of BMHI upon the court's finding that Mr. Rogers's complaint did not aver that BMHI was a governmental entity.

## III. Standard of Review

For actions initiated on or after July 1, 2011, such as the one at bar, the standard of review for summary judgment delineated in Tennessee Code Annotated § 20-16-101 (Supp. 2015) applies. *See Rye v. Women's Care Center of Memphis, MPLLC*, 477 S.W.3d 235, ___, 2015 WL 6457768 at *11 (Tenn. Oct. 26, 2015). The statute provides:

> In motions for summary judgment in any civil action in Tennessee, the moving party who does not bear the burden of proof at trial shall prevail on its motion for summary judgment if it:
>
> (1) Submits affirmative evidence that negates an essential element of the nonmoving party's claim; or
>
> (2) Demonstrates to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim.

3

Tenn. Code Ann. § 20-16-101. The grant or denial of a motion for summary judgment is a matter of law; therefore, our standard of review is *de novo* with no presumption of correctness. *See Rye*, 477 S.W.3d at ___, 2015 WL 6457768 at *12; *Dick Broad. Co., Inc. of Tenn. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 671 (Tenn. 2013) (citing *Kinsler v. Berkline, LLC*, 320 S.W.3d 796, 799 (Tenn. 2010)). "Summary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Rye*, 477 S.W.3d at ___, 2015 WL 6457768 at *12 (quoting Tenn. R. Civ. P. 56.04). Pursuant to Tennessee Rule of Civil Procedure 56.04, the trial court must "state the legal grounds upon which the court denies or grants the motion" for summary judgment, and our Supreme Court has instructed that the trial court must state these grounds "before it invites or requests the prevailing party to draft a proposed order." *See Smith v. UHS of Lakeside, Inc.*, 439 S.W.3d 303, 316 (Tenn. 2014).

Concerning the requirements for a movant to prevail on a motion for summary judgment pursuant to Tennessee Rule of Civil Procedure 56, our Supreme Court has explained in pertinent part:

> We reiterate that a moving party seeking summary judgment by attacking the nonmoving party's evidence must do more than make a conclusory assertion that summary judgment is appropriate on this basis. Rather, Tennessee Rule 56.03 requires the moving party to support its motion with "a separate concise statement of material facts as to which the moving party contends there is no genuine issue for trial." Tenn. R. Civ. P. 56.03. "Each fact is to be set forth in a separate, numbered paragraph and supported by a specific citation to the record." *Id.* When such a motion is made, any party opposing summary judgment must file a response to each fact set forth by the movant in the manner provided in Tennessee Rule 56.03. "[W]hen a motion for summary judgment is made [and] . . . supported as provided in [Tennessee Rule 56]," to survive summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set forth specific facts" *at the summary judgment stage* "showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.,* 475 U.S. at 586, 106 S.Ct. 1348. The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party. If a summary judgment motion is filed before adequate time for discovery has been

4

provided, the nonmoving party may seek a continuance to engage in additional discovery as provided in Tennessee Rule 56.07. However, after adequate time for discovery has been provided, summary judgment should be granted if the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the existence of a genuine issue of material fact for trial. Tenn. R. Civ. P. 56.04, 56.06. The focus is on the evidence the nonmoving party comes forward with at the summary judgment stage, not on hypothetical evidence that theoretically could be adduced, despite the passage of discovery deadlines, at a future trial.

*Rye*, 477 S.W.3d at ___, 2015 WL 6457768 at *22 (emphasis in original).

## IV. Summary Judgment in Favor of Dr. Bhatti

Mr. Rogers asserts that the trial court erred in granting summary judgment to Dr. Bhatti based on the statute of limitations. The statute of limitations applicable to a health care liability action is codified at Tennessee Code Annotated § 29-26-116 (2012), which provides in pertinent part:

(a)(1) The statute of limitations in health care liability actions shall be one (1) year as set forth in § 28-3-104.

(2) In the event the alleged injury is not discovered within such one-year period, the period of limitation shall be one (1) year from the date of such discovery.

The health care liability statute also provides that a plaintiff "shall give written notice of the potential claim to each health care provider that will be a named defendant at least sixty (60) days before the filing of a complaint." Tenn. Code Ann. § 29-26-121(a)(1) (Supp. 2015). The statute further states: "When notice is given to a provider as provided in this section, the applicable statutes of limitations and repose shall be extended for a period of one hundred twenty (120) days from the date of expiration of the statute of limitations and statute of repose applicable to that provider." Tenn. Code Ann. § 29-26-121(c).

In the case at bar, Mr. Rogers sent pre-suit notice to Dr. Bhatti on October 7, 2013, and filed the complaint on December 13, 2013. With regard to the issue of timeliness, the trial court determined:

[A]s a matter of law that on September 13, 2012, and certainly by October 5, 2012, Plaintiff was aware of facts sufficient to place a reasonable person

5

on inquiry notice that he had suffered an injury as the result of Defendant's alleged failure to promptly diagnose a spinal abscess. The Court therefore concludes, as a matter of law, that the one year statute of limitations applicable to Plaintiff's claim ran on October 5, 2013, at the latest.

The trial court therefore granted Dr. Bhatti's motion for summary judgment based on Mr. Rogers's failure to file the complaint within the applicable statute of limitations.

Mr. Rogers insists that he had no reason to suspect that the initial diagnosis of GBS was incorrect until he was informed by another medical practitioner in mid-October 2012 that he never had GBS. Mr. Rogers explains that he thought his symptoms and the spinal abscess were merely a consequence of GBS and that such symptoms would resolve as the illness ran its course. Dr. Bhatti points out that (1) Mr. Rogers signed a consent form for evacuation of a spinal abscess on September 13, 2012; (2) Mr. Rogers allegedly told a nurse at Patricia Neal Rehabilitation Center on October 5, 2012, that he had been diagnosed with GBS and "then found out he had an abscess"; and (3) Mr. Rogers admitted in his deposition that his symptoms began to improve after he underwent the surgical procedure on his spine.

With regard to the discovery of a health care liability cause of action, our Supreme Court has explained:

> [A] medical malpractice cause of action accrues when one discovers, or in the exercise of reasonable diligence should have discovered, both (1) that he or she has been injured by wrongful or tortious conduct and (2) the identity of the person or persons whose wrongful conduct caused the injury. A claimant need not actually know of the commission of a wrongful action in order for the limitations period to begin, but need only be aware of facts sufficient to place a reasonable person on notice that the injury was the result of the wrongful conduct of another. If enough information exists for discovery of the wrongful act through reasonable care and diligence, then the cause of action accrues and the tolling of the limitations period ceases. Neither actual knowledge of a breach of the relevant legal standard nor diagnosis of the injury by another medical professional is a prerequisite to the accrual of a medical malpractice cause of action.

*Sherrill v. Souder*, 325 S.W.3d 584, 595 (Tenn. 2010).[1]

---

[1] In 2012, the Tennessee Legislature amended several statutes by substituting the phrase "medical malpractice" with "health care liability."

For example, in the case of *Foster v. Harris*, 633 S.W.2d 304, 305 (Tenn. 1982), our Supreme Court analyzed a situation wherein the plaintiff was infected with hepatitis while undergoing a dental procedure, during which the dentist cut his finger, intermingling his blood with the plaintiff's blood. Approximately two months later, in January 1976, the plaintiff was informed that he was suffering from "serum hepatitis, a disease that can be contacted and passed from one person to another only through blood contact." *Id.* The plaintiff and his physicians "conducted a diligent search in an effort to determine plaintiff's contact with serum hepatitis, to no avail, until he returned to defendant dentist on July 21, 1976, at which time defendant informed plaintiff that on October 11, 1975, defendant was infected with serum hepatitis." *Id.* The plaintiff thereafter filed his complaint on February 11, 1977, alleging that his cause of action arose on or about July 21, 1976, the date when he was informed of the origin of his illness. *Id.*

The defendant dentist filed a motion to dismiss, alleging that the statute of limitations had run in January 1977, one year following the date upon which the plaintiff was informed that he had hepatitis. *Id.* With regard to the statute of limitations, the *Foster* Court stated:

> In this case, neither the injury nor the tort feasor who perpetrated the injury were discovered until July 21, 1976. All that plaintiff discovered in January was the name of the disease. That discovery did not reveal that he contracted it through a negligent act or who the tort feasor might be. . . . a cause of action in tort does not exist until a judicial remedy is available to the plaintiff; that before a judicial remedy exists, two elements must coalesce, (1) a breach of some legally recognized duty owed by the defendant to the plaintiff; (2) that causes the plaintiff some legally cognizable damage. It is axiomatic that no judicial remedy was available to this plaintiff until he discovered, or reasonably should have discovered, (1) the occasion, the manner and means by which a breach of duty occurred that produced his injury; and (2) the identity of the defendant who breached the duty.

*Id.* at 305 (internal citations omitted).

Similarly, in the subsequent case of *Shadrick v. Coker*, 963 S.W.2d 726, 733 (Tenn. 1998), the plaintiff was injured when his physician performed spinal surgery and utilized pedicle screws that were "experimental" and not approved for use in the spine. The plaintiff did not discover the nature of his injury, however, until almost four years later when he was watching a television news program addressing problems with the use of such screws in the spine. *Id.* With regard to the statute of limitations, our Supreme Court explained:

7

The plaintiff may not, however, delay filing suit until all the injurious effects and consequences of the alleged wrong are actually known to the plaintiff. *Wyatt v. A-Best Company* 910 S.W.2d 851, 855 (Tenn. 1995). Similarly, the statute of limitations is not tolled until the plaintiff actually knows the "specific type of legal claim he or she has," *Stanbury* [v. Bacardi, 953 S.W.2d 671,] 672 [(Tenn. 1997)], or that "the injury constitute[d] a breach of the appropriate legal standard," *Roe v. Jefferson,* 875 S.W.2d 653, 657 (Tenn. 1994). Rather, as we have recently emphasized, the statute of limitations begins to run when the plaintiff knows or in the exercise of reasonable care and diligence should know that an injury has been sustained as a result of wrongful or tortious conduct by the defendant. *Stanbury,* at 677*; see also Roe,* 875 S.W.2d at 657 ("[T]he plaintiff is deemed to have discovered the right of action if he is aware of facts sufficient to put a reasonable person on notice that he has suffered an injury as a result of wrongful conduct."). "It is knowledge of facts sufficient to put a plaintiff on notice that an injury has been sustained which is crucial." *Stanbury,* at 678. Such knowledge includes not only an awareness of the injury, but also the tortious origin or wrongful nature of that injury. *Hathaway v. Middle Tennessee Anesthesiology, P.C.,* 724 S.W.2d 355, 359 (Tenn. App. 1986).

Applying these principles to the record before us, we cannot agree with Dr. Coker's insistence that the statute of limitations began to run as a matter of law in November 1990 (at the latest) when Shadrick had the surgery to remove the screws from his back. It is true, as pointed out by Dr. Coker, that Shadrick was told upon waking up from the surgery on March 12, 1990 that the screws were implanted in his back. This was something Shadrick knew he had not authorized before the surgery. Also, Shadrick knew he had received the surgical implants without being informed of any of the potential risks or complications associated with their use. Finally, he knew that one of the screws had broken—one of the unmentioned risks of the procedure—and had to have surgery in September 1990 to repair the broken screw.

However, we are not persuaded that these facts necessarily compel a reasonable person to conclude that Shadrick knew or reasonably should have known that his problems were the result of wrongful or tortious conduct on the part of Dr. Coker. Although Shadrick was told by Dr. Coker that the screws had been put in his back when he woke up from the March 12, 1990 surgery, he was also told at that time that the screws were

"routine treatment" for the type of surgery he had undergone. The fact that Shadrick was informed that the screws had been put in his back after the surgery "did not mean anything to [him] because nobody ever told [him] about any risk of injury or any problems that could be caused by the screws. At the time, [he] had no idea that the screws were experimental, that they had not been approved by the Food and Drug Administration for use in the spine, or that they would cause [him] any problems." Indeed, it was not until December 17, 1993 while watching television that Shadrick learned that pedicle screws were experimental, that they had not been approved by the Food and Drug Administration for use in the spine, and that such screws had been found to cause a number of problems in patients. Until seeing the television program Shadrick had been "led to believe that [he] had undergone a routine procedure . . . ." As a reasonable lay person, Shadrick could have believed Dr. Coker when he informed him that the screws were routine for use in back-fusion surgeries, especially since Dr. Coker had never disclosed any risks or potential complications related to the use of the screws or even their experimental nature.

*Id.* at 733-34.

Based upon this precedent, we determine that a genuine issue of material fact exists regarding when Mr. Rogers was "aware of facts sufficient to place a reasonable person on notice that the injury was the result of the wrongful conduct of another." *See Sherrill*, 325 S.W.3d at 595. As a reasonable lay person, Mr. Rogers could have believed that his worsening symptoms and the presence of a spinal abscess were simply part of the natural progression of GBS. Mr. Rogers contends that he did not and could not have known that the GBS diagnosis was incorrect until he was informed of this fact by a medical professional in mid-October 2012. Although we recognize that there is no requirement of diagnosis of the actual injury by another medical professional, *see Sherrill*, 325 S.W.3d at 595, we determine that in this situation it was reasonable for Mr. Rogers, a layperson, to conclude that his symptoms and the treatments given were related to the GBS diagnosis until such time as he was informed otherwise.

We also determine that Mr. Rogers's signature on a consent form for evacuation of a spinal abscess is of no consequence because he claims to have reasonably believed that such abscess was a result of GBS and was not, in fact, the sole cause of his symptoms. Similarly, the fact that Mr. Rogers's symptoms began to improve after the spinal abscess evacuation is also unavailing, based upon Mr. Rogers's asserted reasonable belief that the abscess was caused by or related to GBS.

9

Patricia Neal Rehabilitation Center nurse, Mr. Richmond, testified that Mr. Rogers told him on October 5, 2013, that he was being treated at BMHI for GBS and "then found out he had an abscess and [was] transferred here for symptoms." Viewing this testimony in the light most favorable to Mr. Rogers, as we must, we conclude that it also does not negate Mr. Rogers's claim that he believed the spinal abscess to be a part of the progression of GBS. At best, the totality of the evidence establishes the existence of a genuine issue of material fact with regard to when Mr. Rogers was aware of facts sufficient to place him on notice that his injury was the result of the alleged wrongful conduct of Dr. Bhatti by virtue of Dr. Bhatti's misdiagnosis of GBS, which resulted in delay of proper treatment. *See Sherrill*, 325 S.W.3d at 595. Therefore, we conclude that summary judgment was improperly granted in favor of Dr. Bhatti based upon the statute of limitations. The question of when Mr. Rogers was aware of facts sufficient to place him on notice that his injury was the result of the wrongful conduct of Dr. Bhatti should have been resolved by the trier of fact.

## V. Allegations of Unsound Mind

Mr. Rogers also contends that the statute of limitations should have been tolled because he was of unsound mind due to the severity of his illness. Mr. Rogers asserts that he was suffering from blackouts, hallucinations, and memory loss during his hospitalization. As Dr. Bhatti points out, however, Mr. Rogers did not raise this issue at the trial court level, and therefore it cannot be raised for the first time on appeal. *See Simpson v. Frontier Cmty. Credit Union*, 810 S.W.2d 147, 153 (Tenn. 1991); *Fortune v. Unum Life Ins. Co. of Am.*, 360 S.W.3d 390, 403-04 (Tenn. Ct. App. 2010).

## VI. Summary Judgment in Favor of BMHI

Mr. Rogers argues that the trial court improperly granted summary judgment to BMHI for three reasons: (1) the trial court incorrectly failed to allow Mr. Rogers to avail himself of the 120-day extension granted by Tennessee Code Annotated § 29-26-121, following timely pre-suit notice; (2) the trial court failed to allow Mr. Rogers additional time to conduct discovery pursuant to Tennessee Rule of Civil Procedure 56.07; and (3) the trial court erred in requiring that the complaint contain "magic words" averring that BMHI was a governmental entity. We note, however, that the trial court's grant of summary judgment to BMHI was also based upon the fact that BMHI demonstrated that Dr. Bhatti was not an employee of BMHI working within the scope of his employment at the relevant time. Because BMHI filed an affidavit demonstrating that Dr. Bhatti was not and had never been an employee and because Mr. Rogers filed no contrary evidence, the court determined that BMHI had negated an essential element of Mr. Rogers's claim. If this ruling is correct, any issues regarding the alternative bases for summary judgment are pretermitted as moot.

BMHI asserted in its motion to dismiss, and Mr. Rogers did not dispute, that BMHI is a governmental entity. As such, BMHI would be immune from suit unless such immunity is removed by the Governmental Tort Liability Act ("GTLA"), which provides in relevant part:

> Except as may be otherwise provided in this chapter, all governmental entities shall be immune from suit for any injury which may result from the activities of such governmental entities wherein such governmental entities are engaged in the exercise and discharge of any of their functions, governmental or proprietary.

Tenn. Code Ann. § 29-20-201(a) (2012). The GTLA provides for removal of immunity only in certain specifically enumerated instances, only one of which would be potentially applicable here where Mr. Rogers alleged "injury proximately caused by a negligent act or omission of any employee within the scope of his employment . . . ." *See* Tenn. Code Ann. § 29-20-205 (2012).[2]

In support of its motion for summary judgment, however, BMHI filed an affidavit from BMHI's director of human services, who stated that Dr. Bhatti was not and had never been an employee of BMHI. Mr. Rogers never filed any evidence to contradict this affidavit. Therefore, BMHI conclusively established that Dr. Bhatti was not an employee, such that immunity could not be removed on that basis. *See* Tenn. Code Ann. § 29-20-205. In the absence of a basis for removal of immunity, the trial court properly determined that BMHI was immune from suit. *See* Tenn. Code Ann. § 29-20-201. Summary judgment was appropriately granted to BMHI on that basis. Therefore, this Court will not explore the other bases for summary judgment regarding the statute of limitations or Mr. Rogers's failure to allege BMHI's governmental entity status.

Mr. Rogers also argues, however, that the trial court's grant of summary judgment on the above ground was improper because he was not allowed additional time for discovery regarding the legal status of BMHI. As Tennessee Rule of Civil Procedure 56.07 provides:

> Should it appear from the affidavits of a party opposing the motion that such party cannot for reasons stated present by affidavit facts essential to justify the opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or

---

[2] We note that although Mr. Rogers failed to allege in his complaint that BMHI was a governmental entity or that his action was brought pursuant to the GTLA, he did allege that Dr. Bhatti was an employee of BMHI acting within the scope of his employment when he treated Mr. Rogers.

depositions to be taken or discovery to be had or may make such other order as is just.

We note that Mr. Rogers filed no such affidavit in this matter. Although Mr. Rogers's counsel did mention to the trial court that he would like to have additional time for discovery relating to Dr. Bhatti's employment status during the hearing on BMHI's summary judgment motion, counsel filed no formal motion.[3] The trial court granted summary judgment to BMHI on March 24, 2014, but the final order in this matter was not entered until January 9, 2015, following additional time granted by the court for discovery regarding Dr. Bhatti's summary judgment motion. If Mr. Rogers had discovered any countervailing evidence regarding either BMHI or Dr. Bhatti's legal status during that time period, Mr. Rogers had ample time to file a motion and present that evidence to the court or otherwise request additional discovery. Furthermore, assuming, *arguendo*, that Mr. Rogers had asked for such additional time for discovery, it is well settled that the "decision of the trial court in discovery matters will not be reversed on appeal unless a clear abuse of discretion is demonstrated." *See Benton v. Snyder*, 825 S.W.2d 409, 416 (Tenn. 1992). We therefore find this issue to be without merit.

## VII. Conclusion

For the foregoing reasons, we affirm the trial court's grant of summary judgment to BMHI. We reverse the trial court's grant of summary judgment to Dr. Bhatti, determining that a genuine issue of material fact exists precluding summary judgment. Costs on appeal are taxed one-half against the appellant, Justin R. Rogers, and one-half against the appellee, Dr. Mohammed A. Bhatti. This case is remanded to the trial court for further proceedings consistent with this opinion.

_____
THOMAS R. FRIERSON, II, JUDGE

---

[3] The trial court did, however, grant the plaintiff an additional 120 days for discovery with regard to Dr. Bhatti's motion for summary judgment.